Linda J. LePoidevin, a minor, by William E. Dye, her guardian ad litem, and John S. LePoidevin, Plaintiffs-Appellants-Petitioners,

**v.**

Robert G. Wilson, Jr., Western Casaulty & Surety Company, a foreign insurance corporation, and Maryland Casualty Company, a foreign insurance corporation, Defendants-Respondents.

Supreme Court

*No. 81–014. Argued February 4, 1983.—Decided March 1, 1983.*

(Also reported in 330 N.W.2d 555.)

For the plaintiffs-petitioners there were briefs by *William E. Dye* and *John V. Whaley,* Racine, and oral argument by *Mr. Whaley.*

For Robert G. Wilson, Jr., and Western Casualty & Surety Company there was a brief by *Dexter D. Black* and *Brown & Black,* Racine, and for Robert G. Wilson, Jr., and Maryland Casualty Company there was a brief by *Robert D. Scott* and *Frisch, Dudek & Slattery, Ltd.,* and oral argument by *Michael Lund,* all of Milwaukee.

SHIRLEY S. ABRAHAMSON, J.   This is a review of an unpublished decision of the court of appeals filed

May 24, 1982, affirming a judgment of the circuit court for Racine county, James Wilbershide, circuit judge. The circuit court sustained a demurrer to the amended complaint and dismissed plaintiff's action seeking damages for personal injuries suffered when plaintiff dived from a defendant's pier into shallow water. The circuit court held that the amended complaint did not state a cause of action for negligence because a landowner does not owe a duty of ordinary care to a licensee and that the amended complaint did not allege facts constituting a cause of action for active negligence which is required to render a landowner liable to a licensee. The court of appeals affirmed the judgment of the circuit court holding that the conduct described in the complaint does not constitute active negligence and that the shallow water was not a "trap" triggering a duty to warn on the part of the landowner. We hold that the complaint states a cause of action, and accordingly we reverse the decision of the court of appeals and the judgment of the circuit court and remand the cause to the circuit court.

On July 20, 1974, plaintiff Linda LePoidevin, nearly 17 years of age, was injured when she dived into water three feet deep from a pier along the property owned by Robert G. Wilson, Jr. (hereafter referred to as Wilson), and several other persons. Plaintiff commenced the action in 1975 against Wilson and six others, who jointly owned, kept, and maintained the 60-foot pier on the lake, and their insurers. [1]

Because this case is here at the pleading stage, the relevant facts are those stated in the amended complaint. The amended complaint alleges that on July 20, 1974, Wilson's 17-year-old son Bob brought the plaintiff to Wilson's cottage near Bohner's Lake in Racine County. Wil-

[1] A settlement was reached with the property owners other than Wilson and the suit against the other property owners was dismissed in May 1980.

son and six other property owners owned an easement leading to the lake and a pier extending 60 feet into the lake. Bob's mother (to whom, according to the complaint, Wilson had delegated the authority to permit guests to visit and to select chaperones) had given Bob permission to take plaintiff swimming on condition that Wilson's adult son-in-law Larry and his wife, who were occupying the Wilson cottage as residents, would act as chaperones. The plaintiff had not previously been swimming in this lake.

On arrival at the cottage, Bob and Larry went down to the lake, and the plaintiff followed shortly. For some 15 or 20 minutes the plaintiff stood or sat on the pier, holding a towel in front of her to conceal her bikini bathing suit, while Bob and Larry ridiculed, taunted, and challenged her to enter the water. Larry allegedly approached Linda from behind and without warning grabbed the towel from her. Larry's act caused the plaintiff to become "surprised, startled, frightened, distracted, and greatly embarrassed," and being unaware of the shallow water, she plunged immediately and instinctively head-first into Bohner's Lake, struck bottom, and was seriously injured.

The amended complaint alleges that Wilson and the other owners were negligent in failing to erect any signs warning of shallow water. The amended complaint further asserts that Larry and Bob were negligent in taunting and challenging the plaintiff to enter the water without warning her of its shallowness, that Larry was negligent in grabbing her towel and so startling and embarrassing her as to prompt her to plunge instinctively into shallow water when he knew or should have known the consequences of his act, and that Bob acted negligently when he failed to warn plaintiff of Larry's approach and failed to admonish Larry to refrain from grabbing the towel. And finally, the amended complaint alleges

that as chaperone Larry was an agent of Wilson,[2] that Wilson is vicariously liable for Larry's negligence, and that Larry and Bob were additional insureds under Wilson's insurance policy.[3] Neither Bob nor Larry is named as a defendant. Wilson and Wilson's insurers are the defendants.

In briefs and in oral argument before this court the plaintiff discussed the duty of care owed by Wilson to plaintiff and whether the acts of Larry and Bob as set forth in the complaint constituted active negligence. None of the parties argued in briefs before this court whether Larry was an agent of Wilson, whether Larry and Bob were additional insureds under Wilson's policy, or whether the shallow water into which plaintiff dived was a "trap." This court will accordingly confine its review to the issues raised by the parties, that is, whether the amended complaint sets forth a cause of action for personal injury based on acts constituting either active negligence or negligence[4] and whether sec. 29.68, Stats. 1975, bars plaintiff's claim.

---

[2] One insurance company defendant, Maryland Casualty Co., contested the agency relationship at the court of appeals, but that court did not rule on the sufficiency of the complaint regarding agency in view of its sustaining the demurrer on other grounds.

[3] The complaint alleges that Larry and his wife were occupying the Wilson cottage as residents at the time of the accident. Bob was a member of the Wilson household. Plaintiff alleges that Larry and Bob were additional insureds under Wilson's insurance policies. Maryland Casualty Co. disputes the claim that Larry and Bob are additional insureds, but neither the circuit court nor the court of appeals addressed the issue.

A member of the household of a possessor of land, who does an act or carries on an activity on the land, is subject to the same liability and enjoys the same freedom from liability, for physical harm caused to others upon the land as though he or she were the possessor of the land. Restatement (Second) of Torts, sec. 382 (1965).

[4] The acts referred to are those of Larry and Bob and the amended complaint imputes the acts to Wilson on a theory of

The purpose of a demurrer is to test the legal sufficiency of the complaint. The demurrer admits all facts pleaded and on review of a complaint upon demurrer, the court will determine whether the complaint states facts which constitute a cause of action as a matter of law. Because on demurrer the issue before the court is one of law, this court need not give special deference to the determination of the circuit court or the court of appeals. *First National Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). The complaint will be construed liberally, and the court will uphold the complaint if it expressly or by reasonable inference states any cause of action. *Scheeler v. Bahr,* 41 Wis. 2d 473, 476, 164 N.W.2d 473 (1969).

In 1974 when the injury in this case occurred the duty of a landowner or occupier (hereafter referred to as landowner) to a person injured on the land varied with the status of the person who suffered the injury—that is, whether the person was a trespasser, licensee, or invitee. In stating her cause of action the plaintiff here recognizes that she was on the land as a social guest and that, in the parlance of tort law, she was a licensee. *Szafranski v. Radetzky,* 31 Wis. 2d 119, 126, 141 N.W.2d 902 (1966). The landowner or occupier might be liable for injuries to a licensee in two situations—when the injury was caused by a "trap" on the premises concealed from the licensee but known to the landowner or when the injury was caused by the active negligence of the landowner. *Szafranski v. Radetzky,* 31 Wis. 2d 119, 125, 126, 127, 141 N.W.2d 902 (1966).

As we explained before, we will not discuss the question of "trap," because it is not raised or briefed in this court. The question therefore is whether the conduct al-

vicarious liability. This issue is not considered by this court, because it was not briefed or argued by the parties.

leged in the complaint constitutes "active negligence" making Wilson or the insureds liable for injury to the plaintiff licensee.

In landowner-licensee cases "active negligence" is to be distinguished from a condition of the premises. Although a landowner does not owe a duty of ordinary care to a licensee as to the condition of the premises, a landowner who carries on an affirmative act, an active operation or activity, does have an obligation to exercise ordinary care for the protection of a licensee.[5] In *Kaslo v. Hahn*, 36 Wis. 2d 87, 153 N.W.2d 33 (1967), a case involving a hip injury caused by a licensee's falling over a shoe scraper attached to a patio, the question arose whether the defendant's act of affixing the shoe scraper to the patio eleven years before the injury constituted "active negligence." In holding that the act of affixing the shoe scraper was not active negligence, the court explained the distinction between "active negligence" and a condition of the premises as follows:

"The term 'active negligence' then, as used in licensor-licensee cases, connotes the carrying on of some operation or activity in a negligent manner. . . .

"A condition of the premises whether created through an affirmative act of a defendant or through natural causes is not an activity. An act, then, which creates a dangerous 'condition of the premises' is not an 'activity' nor is it 'active conduct,' 'operational conduct' or 'active intervention.' Consequently, a licensor cannot be held liable for an act which creates a dangerous 'condition of the premises.' In such a case liability can be established if the condition is a trap and the defendant fails to warn,

[5] *Szafranski v. Radetzky*, 31 Wis. 2d 119, 127, 141 N.W.2d 901 (1966). *See also* 2 Restatement (Second) of Torts sec. 341, p. 207 (1965); Prosser, Law of Torts, sec. 60, p. 379, 380 (4th ed. 1971); 2 Harper and James, *Law of Torts*, sec. 27.10, p. 1476 (1956); James, *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees*, 63 Yale L.J. 605, 610 (1954).

but the liability then is based on the defendant's failure to warn rather than his act in creating a dangerous condition." *Kaslo v. Hahn,* 36 Wis. 2d 87, 92–93, 153 N.W.2d 33 (1967).

The court has said that the following activities were "active negligence" triggering the landowner's duty to exercise ordinary care for the protection of the licensee: storage and handling of explosives resulting in an explosion injuring guests, *Szafranski v. Radetzky,* 31 Wis. 2d 119, 141 N.W.2d 902 (1966); the owner's employee hitting a licensee in the head with a pipe, *Cermak v. Milwaukee Air Power Pump Co.,* 192 Wis. 44, 211 N.W. 354 (1927); coal hoist operated by owner's agents striking a licensee, *Taylor v. Northern Coal Dock Co.,* 161 Wis. 568, 152 N.W. 265 (1915); landowner injuring licensee while driving truck on own land, *Baumgart v. Spierings,* 2 Wis. 2d 289, 86 N.W.2d 413 (1957).

We agree with the court of appeals that the acts of taunting the plaintiff to enter the water and of grabbing her towel were "active conduct" giving rise to a duty of ordinary care on the part of the actor. The court of appeals, however, refused to characterize the conduct as violating the duty of ordinary care. The court of appeals concluded that the plaintiff reacted voluntarily by diving into the water and held that it was not foreseeable that the "active conduct" created an unreasonable risk of harm. Furthermore the court of appeals concluded that even if there were some negligent active conduct on the part of Larry or Bob or both, the plaintiff's own causal negligence exceeded Larry's or Bob's.

While the existence of negligence is a mixed question of law and fact, generally decided by the jury, the circuit court, the court of appeals, and this court have the authority to decide the preliminary question of law, that is, whether the facts of the complaint (which are for the

purposes of the demurrer admitted as true) present a jury question on the issue of negligence.

For a court to hold that no jury question is presented and that the actor is not negligent as a matter of law, "the court must be able to say that no properly instructed, reasonable jury could find, based upon the facts presented, that the defendants failed to exercise ordinary care." *Ceplina v. South Milwaukee School Board,* 73 Wis. 2d 338, 342, 243 N.W.2d 183 (1976). To determine the issue of negligence in this case on the basis of the complaint, the facts and reasonable inferences to be drawn therefrom must lead to the inescapable conclusion that the acts described in the complaint did not constitute negligent conduct or that the plaintiff's negligence exceeded the negligence of each of the other actors.

The duty of ordinary care in this case is the same as the duty of care in the usual negligence case: "The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act. . . . A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone." *Christians v. Homestake Enterprises, Ltd.,* 101 Wis. 2d 25, 34, 303 N.W.2d 608 (1981), quoting *A.E. Investment Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 483, 484, 214 N.W.2d 764 (1974). *See also Ollerman v. O'Rourke Co., Inc.,* 94 Wis. 2d 17, 46–47, 288 N.W.2d 95 (1979); *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 732, 275 N.W.2d 660 (1979).

Larry's or Bob's conduct may be negligent if it involves an unreasonable risk of harm to another through the foreseeable action of the other person. Restatement (Second) of Torts, sec. 302 (1965). If an actor's conduct

creates a situation which is capable of being made dangerous to others by a subsequent action of a human being, the actor's negligence depends upon whether he or she as a reasonable person should recognize the subsequent action of a human being as probable. The actor as a reasonable person is required to know the qualities, capacities, habits, and propensities of human beings in the circumstances which he or she has created. Insofar as such knowledge would lead the actor as a reasonable person to predict a particular action of a human being, the actor is required to anticipate and provide against it. Thus the actor is negligent if he or she intentionally creates a situation, or if his or her conduct involves a risk of creating a situation, which the actor should realize as likely to be dangerous to another individual in the event of a customary or normal act of that individual. Restatement (Second) of Torts, sec. 290, comment *i*, sec. 302, comment *d*, and sec. 303 (1965).

The courts below concluded that Wilson was not liable as a matter of law because no jury could find on the basis of the complaint that Larry or Bob could have reasonably foreseen that their taunting and Larry's grabbing of the towel would lead the plaintiff to dive into the lake. We conclude that a properly instructed reasonable jury could, on the basis of the facts in the complaint, find that Larry and Bob could have reasonably foreseen that water poses inherent dangers, that rough or boisterous play, while not dangerous per se, poses reasonably foreseeable hazardous consequences when engaged in near water, that the plaintiff would try to extricate herself as best she could from what appeared to her to be an embarrassing situation, and that her effort would of necessity be made in haste and without an accurate assessment of the nature of the risks to which she exposed herself. The jury could find Larry and Bob negligent in engaging in affirmative con-

duct which they could anticipate would create a situation dangerous to the plaintiff because of her foreseeable conduct.

Because we are not convinced that as a matter of law there was no foreseeable risk of harm incident to the boisterous horseplay on the pier, we conclude that whether Bob's and Larry's perpetration of a joke constitutes negligence and whether the plaintiff's diving constitutes causal contributory negligence are questions for the jury. Cf. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977) ; *Lujan v. Reed*, 78 N.M. 556, 434 P. 2d 378 (1967) ; *Lewis v. Woodland*, 101 Ohio App. 442, 140 N.E.2d 322 (1955).

Plaintiff's second cause of action is based on negligence. Relying on *Pagelsdorf v. Safeco Ins. Co. of America*, 91 Wis. 2d 734, 745, 284 N.W.2d 55 (1979), the plaintiff urges that the *Antoniewicz* case abolishing the common law distinction between the duties owed by a landowner to invitees and those owed by the landowner to licensees applies retroactively to this lawsuit and that this court should hold that the plaintiff licensee was owed a duty of ordinary care. *Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 858, 236 N.W.2d 1 (1975). In view of our conclusion that this complaint states a cause of action for active negligence under the common law pre-*Antoniewicz* rule, we see no need to reconsider at this time our decision to apply the *Antoniewicz* rule prospectively only.

Wilson and the insurers urge that the complaint be dismissed because sec. 29.68, Stats. 1975, immunizes the landowner from liability to the plaintiff in this case.[6]

---

[6] Sec. 29.68, Stats. 1975, provides as follows:

**29.68 Liability of landowners.** (1) SAFE FOR ENTRY: NO WARNING. An owner, lessee, or occupant of premises owes no duty to keep the premises safe for entry or use by others for hunting, fishing, trapping, camping, hiking, snowmobiling, berry picking, water sports, sightseeing or recreational purposes, or to give warning of

Sec. 29.68, Stats. 1975, modifies the relationship which existed at common law between a landowner and the invitee-licensee-trespasser entrants on the land. Sec. 29.68

any unsafe condition or use of or structure or activity on such premises to persons entering for such purpose, except as provided in sub. (3).

(2) PERMISSION. An owner, lessee or occupant of premises who gives permission to another to hunt, fish, trap, camp, hike, snowmobile, sightsee, berry pick or to proceed with water sports or recreational uses upon such premises does not thereby extend any assurance that the premises are safe for such purpose, or constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted, except as provided in sub. (3).

(3) LIABILITY. This section does not limit the liability which would otherwise exist for wilful or malicious failure to guard or to warn against a dangerous condition, use, structure or activity; or for injury suffered in any case where permission to hunt, fish, trap, camp, hike, snowmobile, sightsee, berry pick or to proceed with water sports or recreational uses was granted for a valuable consideration other than the valuable consideration paid to the state or to a landowner by the state; or for injury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike, snowmobile, sightsee, berry pick or to proceed with water sports or recreational uses was granted, to other persons as to whom the person granting permission, or the owner, lessee or occupant of the premises, owed a duty to keep the premises safe or to warn of danger.

(4) INJURY TO PERSON OR PROPERTY. Nothing in this section creates a duty of care or ground of liability for injury to person or property.

(5) DEFINITIONS. In this section:

(a) "Premises" includes lands, private ways and any buildings, structures and improvements thereon.

(b) "Owner" means any private citizen, a municipality as defined under s. 144.01(12), the state, or the U.S. government, and for purposes of liability under s. 270.58, any employe of the foregoing.

(c) "Valuable consideration" does not include contributions to the sound management and husbandry of natural and agricultural

provides *inter alia* that the landowner owes no duty to keep the premises safe for entry or use by others for water sports or recreational purposes or to give warning of any unsafe condition or use of or structure or activity on such premises to persons granted permission to enter the land for water sports or recreational purposes and who do not pay "valuable consideration," except that the statute "does not limit the liability which would otherwise exist for wilful or malicious failure to guard or to warn against a dangerous condition, use, structure or activity," sec. 29.68(3).

In contrast, under common law, those who entered on the premises with the permission of the landowner but in the absence of a mutuality of interest with the landowner were licensees to whom the landowner owed a duty to warn as to "traps" and to refrain from active negligence.

Plaintiff was invited—and apparently was thus "permitted" within the terms of sec. 29.68—to enter the land for water sports or recreational purposes. She paid no valuable consideration to enter on the premises. She was, as we said before, a licensee under common law. Although this case may at first appear to fall within the ambit of sec. 29.68, the plaintiff persuasively argues that the legislature did not intend sec. 29.68 to bar her claim.

This court has previously noted that the scope of sec. 29.68 is unclear. For example, the limits of the statutory definition of premises are not entirely clear, *Wirth v. Ely*, 93 Wis. 2d 433, 444, 287 N.W.2d 140 (1980); the words "permitted," "dangerous condition, use, structure or activity" are not defined. The language of the statute leaves uncertain the types of lands, persons, and events

resources of the state resulting directly from recreational activity, payments to landowners either in money or in kind, if the payment does not have a value in excess of $25 annually, or those entrance fees paid to the state, its agencies or departments, municipalities as defined in s. 144.01(12) or the U.S. government.

intended to be included within its purview. Thus in adopting sec. 29.68 the legislature has introduced additional confusion into the law of tort liability of owners and occupiers of land, an already troublesome area of the law.

The common law setting forth tort liability of owners and occupiers of land to entrants on the land developed to effect a compromise between the social value of human life and the social value of the use of the land. In changing the common law rules applicable to the tort liability of the landowner to the entrant, the legislature has, in sec. 29.68, made a new accommodation of the conflicting rights and interests of landowner and entrant. In sec. 29.68 the legislature has shifted some of the risk from the landowner to the entrant, apparently having decided that the social good of encouraging landowners to open their land to the public for recreational purposes outweighs the social cost of imposing the expense of injuries on the entrant to the land rather than on the landowner who may be in a position to prevent the injury.

The trend in the common law has been to expand the areas of tort liability, to decrease tort immunity, and to increase the number of entrants to whom the landowner owes a duty of ordinary care. Sec. 29.68 represents a different policy. It reduces the landowner's duty of reasonable care and grants the landowner partial immunity. Note, *Torts—Statutes—Liability of Landowner to Persons Entering for Recreational Purposes*, 1964 Wis. L. Rev. 705, 708. Sec. 29.68 changes the common law; it is a statute in derogation of the common law.

In defining the scope of sec. 29.68, Stats. 1975, this court has in past cases applied the rule that statutes in derogation of the common law must be strictly construed. Page, *Statutes in Derogation of Common Law: The Canon as an Analytical Tool*, 1956 Wis. L. Rev. 78. This maxim of construction provides that where there exists a

common law doctrine relevant to the issue presented by the parties and the statute would change the common law, the legislative intent to change the common law must be clearly expressed. In *Copeland v. Larson,* 46 Wis. 2d 337, 347, 174 N.W.2d 745 (1970), the court strictly construed the words "valuable consideration," in sec. 29.68, and in *Goodson v. Racine,* 61 Wis. 2d 554, 559, 213 N.W.2d 16 (1973), the court strictly construed the statute to limit its scope to landowners of private (as) contrasted with public) lands who opened their lands for recreational purposes. *See* Note, *Torts—Statutes—Liability of Landowner to Persons Entering for Recreational Purposes,* 1964 Wis. L. Rev. 705, 708; ch. 79, Laws of 1975.

Because sec. 29.68 is contrary to the common law and the general public policy of the state that a person should be liable for negligently inflicting injury, the statute should be construed strictly to accomplish its legislative purpose. Sec. 29.68 should not apply to cases where its legislative purpose is not furthered nor where its application would extend the statute beyond the boundaries intended by the legislature.

The legislative purpose of sec. 29.68 is "to encourage the use of forest and farmlands for many outdoor recreational sports by restricting the common-law liability of the landowner to such users in various respects." *Copeland v. Larson,* 46 Wis. 2d 337, 344, 174 N.W.2d 745 (1970).[7] Similarly in *Goodson v. Racine,* 61 Wis. 2d 554,

---

[7] Sec. 29.68 was initially promoted by owners of timber lands who wanted to invite hunters to hunt deer on their lands to protect the trees from damage by the deer but feared tort liability. *Goodson v. City of Racine,* 61 Wis. 2d 554, 558, 559, 213 N.W.2d 16 (1973); Note, *Torts—Statutes—Liability of Landowner to Persons Entering for Recreational Purposes,* 1964 Wis. L. Rev. 705. The legislation received support not only from owners of timber lands but from groups representing the interests of hunters, sportsmen, and conservationists.

558, 213 N.W.2d 16 (1973), the court said that "[t]he legislative history of the statute reveals that the purpose for which the statute was promulgated was to limit the liability of private landowners who opened their lands to the public."[8]

While the legislature intended to expand the immunities of landowners to accomplish these purposes, we do not presume that the legislature intended sec. 29.68 to work a wholesale change in the entire law relating to the obligations of all landowners to all entrants to the land, including social guests invited to the premises for recreational purposes.

Wilson's use of the land in this case does not seem to be the type of use the statute was designed to protect or encourage. Wilson has not opened his land to the "public" generally nor has he given permission to one or more members of the "public" to use the land for recreational purposes. He opened his land to a social guest who was invited onto the land. Granting the protection afforded

---

[8] The Wisconsin statute enacted in 1963 was one of the early recreational use acts in the country. A model act was developed by the Council of State Governments in 1965 and at least 40 states have adopted statutes similar to the Model Act and sec. 29.68. The aim of these recreational use acts is to encourage landowners to make land and water areas available to the public for recreational use by limiting their liability toward persons entering therein for such purposes. See sec. 1, Model Act, 24 Suggested State Legislation 150 (1965).

For a discussion of the ambiguities in the recreational use acts and the problems they present, *see, e.g.,* Barrett, *Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability,* 53 Wash. L. Rev. 1 (1977–78); Knowles, *Landowners' Liability toward Recreational Users: A Critical Comment,* 18 Idaho L. Rev. 59 (1982); Comment, *Tort Liability of Agricultural Landowners to Recreational Entrants: A Critical Analysis,* 11 U. Cal.-Davis L. Rev. 367 (1978); Comment, *Landowner Liability under the Wyoming Recreational Use Statute,* 15 Land and Water L. Rev. 649 (1980).

by sec. 29.68 to a landowner who invites a friend of the family to the summer cottage as a guest to join the family in water sports does not foster the purpose of sec. 29.-68 to encourage landowners to make land and water areas available to the public for recreational use. Thus courts in other states, looking at the purpose of similar recreational use acts, have held these acts inapplicable to landowners who invite social guests to use a residential swimming pool. *Herring v. Hauck,* 118 Ga. App. 623, 165 S.E.2d 198 (1968); *Boileau v. DeCecco,* 125 N.J. Super. 263, 310 A.2d 497 (App. Div. 1973).

We recognize that it is difficult to draw a bright line between a landowner who grants permission to persons to use the premises for recreational purposes and is protected by sec. 29.68 and a landowner who invites a person to use the premises for recreational purposes and is not protected by sec. 29.68.

Nevertheless we are not convinced that the legislature intended sec. 29.68 to apply, in a case like the one before us, to limit the landowner's liability to wilful and malicious failure to guard or to warn against a dangerous condition, use, structure, or activity, sec. 29.68(3), Stats. 1975, when the landowner engaged in active negligence toward the plaintiff, a social guest. Construing the statute strictly to accomplish its legislative purpose and to avoid extending the statute beyond the borders intended by the legislature, we conclude that sec. 29.68 does not bar plaintiff's claim.

For the reasons set forth we hold that the amended claim states a cause of action. Accordingly we reverse the decision of the court of appeals and the judgment of the circuit court and remand the cause to the circuit court for further proceedings not inconsistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed; the judgment of the circuit court is reversed; and the cause is remanded to the circuit court.