Jon P. Bixby et al., Appellants, v Alice Eddy et al., Respondents.

Third Department, May 30, 1991

52

APPEARANCES OF COUNSEL

*Robert J. Simpson* for appellants.

*Chernin & Gold (Sam P. Monachino* of counsel), for respondents.

OPINION OF THE COURT

MERCURE, J.

Plaintiffs commenced this action alleging, *inter alia,* defendants' negligence in causing physical injuries and property damage sustained when a motorcycle driven by plaintiff Jon P. Bixby slid off a curve and turned on its side. The matter came on for trial and, at the conclusion of plaintiffs' case, Supreme Court dismissed the complaint pursuant to CPLR 4401. Plaintiffs appeal.

We affirm. The evidence adduced at trial, viewed in a light most favorable to plaintiffs *(see, Hylick v Halweil,* 112 AD2d 400), follows. Plaintiffs became involved in a verbal altercation with defendant Robert Eddy at the Ross Park Zoo in the City of Binghamton, Broome County. Plaintiffs and Eddy and his companions left the zoo grounds at closing time, and Eddy and his party drove from the zoo parking lot about a minute prior to plaintiffs' departure on Bixby's motorcycle. Eddy drove a short distance from the zoo, backed into a driveway and waited to see which way plaintiffs would go. When plaintiffs drove from the zoo, purposely selecting an unfamiliar alternate route to avoid a confrontation, Eddy followed them.

After driving 0.6 mile, Bixby came upon a curve in the road at the crest of a hill. Because of his preoccupation with the Eddy vehicle in his rearview mirror, lack of familiarity with the road, the presence of an oncoming car, excessive speed for the curve and overapplication of his foot brake, Bixby was unable to negotiate the curve. According to Bixby's testimony, while the initial speed limit was 30 miles per hour, upon crossing the city line "a few hundred feet" from the park the speed limit increased to 40 miles per hour. When Bixby first saw the Eddy vehicle, it was 100 to 150 feet behind him. While Eddy initially gained upon him, Bixby accelerated at the point where the speed limit changed and the distance

between them continued to widen thereafter. Bixby also testified that he never exceeded the posted speed limit and acknowledged that Eddy never physically interfered with his operation or the path of his motorcycle.

We conclude, from plaintiffs' own account of the events leading up to the accident, that Eddy was driving his vehicle at less than the posted speed limit for nearly the entire distance from Ross Park to the location of the accident and that the gap between the vehicles was continuously widening. Thus, we cannot accept plaintiffs' contention that Eddy was "pursuing" them; at most, he was following at a distance. Accordingly, we reject plaintiffs' reliance upon *Veverka v Metropolitan Cas. Ins. Co.* (2 Wis 2d 8, 85 NW2d 782), where the car the plaintiff occupied was closely pursued by a gang of motorcyclists at speeds of up to 70 miles per hour and was actually struck by one of the pursuers.

We have no significant disagreement with the legal principles enunciated by the dissent and agree that liability may attach in a case where the actor's conduct reasonably places another in fear or otherwise causes a reaction which, in turn, creates an unreasonable risk of harm. The cases relied upon by the dissent offer good examples of that kind of conduct. In *Lujan v Reed* (78 NM 556, 434 P2d 378), the plaintiff, a 16-year-old girl, was sitting in the passenger seat of a convertible with the engine running, waiting for her girlfriend to come out of the house. Without warning, two young men jumped in the car and drove it away, causing the plaintiff to open the car door and either jump or fall out in an attempt to escape. In *LePoidevin v Wilson* (111 Wis 2d 116, 330 NW2d 555), the plaintiff, also a 16-year-old girl, was on a lakeside pier and, reluctant to expose herself in her revealing swimsuit, held a towel in front of her. Two young men ridiculed, taunted and challenged the plaintiff to enter the water. Finally, when one of the men approached her from behind and suddenly grabbed the towel from her, the plaintiff dove head first into the three-foot-deep water, sustaining serious injuries. In *Sparks v City of Compton* (64 Cal App 3d 592, 134 Cal Rptr 684), the plaintiff drove away at high speed when undercover police officers exited their vehicle in a hostile, threatening manner, brandishing firearms. Clearly, these cases, respectively involving an apparent abduction, sudden physical contact and threat of death by a deadly weapon, cannot be compared to the fact pattern presented in this case. Neither the dissent nor the majority has located a case in this or, for that matter, any

other State which would impose liability as a result of conduct as ambiguous and nonthreatening as that present here.

In a narrow class of cases we may determine foreseeability as a matter of law, and here it is our view that Eddy could not have reasonably anticipated that Bixby would respond to his actions by driving off the road *(see, Danielenko v Kinney Rent A Car,* 57 NY2d 198, 204). Plaintiffs have not "show[n] that the act as to [them] had possibilities of danger so many and apparent as to entitle [them] to be protected against the doing of it though the harm was unintended" *(Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 345). Accordingly, Supreme Court's order dismissing the complaint should be affirmed.

LEVINE, J. (dissenting). We respectfully dissent. A jury, if it believed the testimony of plaintiff Jon P. Bixby, could find the following facts. While Bixby and his fiancée were visiting the Ross Park Zoo in the City of Binghamton, Broome County, Bixby observed defendant Robert Eddy and three companions, two men and a woman, violating the zoo's rules against drinking alcoholic beverages on the premises. Subsequently, Bixby apparently incurred the wrath of Eddy's group by interfering with their attempts to annoy caged bobcats with a long stick. Bixby was subjected to verbal abuse by way of profanities and insults from Eddy's group and challenges to fight. Eddy and his three companions followed Bixby and his fiancée out of the zoo, "still verbally abusing us, hassling us, trying to provoke a fight". Bixby waited for Eddy to leave the zoo parking lot before departing in order to avoid a confrontation. As Eddy's vehicle left the parking lot, Eddy and his companions "were hanging out the top of the car giving us the finger, yelling at us". Eddy did not drive away but instead parked in a driveway adjoining the route from Ross Park, waiting for Bixby to pass on his motorcycle in order to follow him. When Bixby drove by, Eddy pulled out behind him and persisted in following despite Bixby's efforts to elude him.

We think a trier of fact could reasonably find on the basis of the foregoing facts that Bixby was placed in fear that Eddy was following him for the ultimate purpose of assaulting Bixby with his automobile at some opportune moment or mounting a physical attack once Bixby reached his destination. Keeping in mind that Bixby was outnumbered three males to one, that Eddy's group had been drinking and had already manifested extreme hostility, and that Bixby was on a motorcycle and, thus, quite vulnerable to a vehicular assault,

Bixby's fears were certainly not irrational under the circumstances.

Conversely, even if it was not Eddy's actual intent to assault Bixby, Eddy should certainly have expected that his persistent following of Bixby, even at a distance, would instill fear in Bixby of physical danger to himself and his fiancée. A jury, in our view, could readily conclude that it was likewise foreseeable that such fear would cause Bixby to drive faster than he should have in approaching the curve where he went out of control, to be distracted so as not to see the curve in time, and generally to impair Bixby's driving ability. Thus, in our opinion, the evidence would permit a jury to find that Eddy's conduct created a foreseeable risk of injury to Bixby which, if that risk was unreasonable, could support recovery. A jury could easily find the foreseeable risk of harm here to be unreasonable. "Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent *if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done"* (Restatement [Second] of Torts § 291 [emphasis supplied]). The social value of Eddy's activity leading up to the accident was nil.

Although research has not uncovered any New York case close in point, the principle giving rise to the imposition of liability here is well founded in tort doctrine. Thus, Restatement (Second) of Torts § 303 holds: "An act is negligent if the actor intends it to affect, or realizes or should realize that it is likely to affect, the conduct of another, a third person, or an animal in such a manner as to create an unreasonable risk of harm to the other." Another respected authority on tort law states that "a person may be required to anticipate * * * that human beings who are placed in a position of peril will endeavor, more or less instinctively, to escape, and may do harm to themselves or others in the attempt" (Prosser and Keeton, Torts § 33, at 198 [5th ed]).

Other jurisdictions are in accord with the foregoing authorities. For example, the Supreme Court of New Mexico, in *Lujan v Reed* (78 NM 556, 560, 434 P2d 378, 382) held:

"Negligent conduct may consist of an activity which a reasonable person should recognize as involving an unreasonable risk of harm to another. * * * This recognition often involves an assessment of how others may react to the actor's

conduct. * * * The danger to the victim may often arise from the reaction of that person to the conduct of the actor. * * *

"It would certainly seem reasonable to anticipate that a person would make an effort to extricate himself from what appeared to be a frightening situation. This effort may of necessity be made in haste and without an accurate assessment of the nature of the risks and accordingly expose the victim to danger in the process. Whether the risk that such an effort will be made in response to the actor's conduct is an unreasonable one under a particular set of circumstances requires a determination whether the magnitude of the risk to another is outweighed by the utility of the conduct of the actor".

In *Sparks v City of Compton* (64 Cal App 3d 592, 597, 134 Cal Rptr 684, 687), a California appeals court ruled that "[g]enerally, one who negligently creates a situation threatening harm to another person may be held liable for injury to that person or a third party resulting from the threatened party's efforts to avoid the peril". The Wisconsin Supreme Court, in *LePoidevin v Wilson* (111 Wis 2d 116, 125, 330 NW2d 555, 560), stated that an "actor is negligent if he or she intentionally creates a situation, or if his or her conduct involves a risk of creating a situation, which the actor should realize as likely to be dangerous to another individual in the event of a customary or normal act of that individual".

There is no reason to believe that it would be inconsistent with New York law to apply the foregoing principle to impose liability here for the harm from a plaintiff's foreseeable reaction to the threatening conduct of a defendant. Indeed, in *Lowery v Manhattan Ry. Co.* (99 NY 158, 162), the Court of Appeals held that injuries from "an instinctive act which naturally would take place when a person seeks to avoid great peril" may give rise to liability of the person whose "negligent conduct and a sense of impending danger induced the act". And New York has also recognized recovery for consequential physical injuries from negligently induced fright and hysteria *(see, Battalla v State of New York,* 10 NY2d 237, 239).

Finally, we think that the majority is in error in apparently concluding in the penultimate paragraph of its opinion that Bixby can only recover upon proof of a high-speed close pursuit and threat of immediate violence by Eddy. That such conduct would, under existing New York law, give rise to liability as a civil assault *(see, Roller v Frankel,* 14 AD2d 971;

Prosser and Keeton, Torts § 10, at 44-45 [5th ed]) does not negate the propriety of granting recovery on the negligence theory we believe is applicable to the facts, proof of which Bixby submitted on his direct case.

For all the foregoing reasons, we would reverse Supreme Court's order and remit for a new trial.

WEISS, J. P., and YESAWICH, JR., JJ., concur with MERCURE, J.; LEVINE and HARVEY, JJ., dissent and vote to reverse in an opinion by LEVINE, J.

Order affirmed, with costs.