784 So.2d 844 (2001)
Brian Paul DOMINGUE, et al.
v.
Harlton K. STANLEY, et al.
No. 01-0041.
Court of Appeal of Louisiana, Third Circuit.
May 2, 2001.
*845 James P. Lambert, Curtis & Lambert, Lafayette, LA, Counsel for Plaintiffs/Appellants Brian Paul Domingue, Cynthia Domingue.
J. Michael Percy, Percy, Smith, Foote & Gadel, Alexandria, LA, Counsel for Defendants/Appellees Harlton K. Stanley, Carolyn Chevalier Stanley, Empire Construction Company of Glenmora, Inc.
Court composed of YELVERTON, SAUNDERS, and PETERS, Judges.
PETERS, J.
This suit arises out of a tragic fourwheeler (ATV) accident which occurred on July 4, 1997, in Rapides Parish. Tance Paul Domingue, the seven-year-old son of Brian Paul Domingue and Cynthia Domingue, died from the injuries he sustained in the accident, and his father sustained severe personal injuries. Brian and Cynthia Domingue (hereinafter sometimes referred to as "the plaintiffs") filed suit to recover damages arising out of the death of their child and Mr. Domingue's injuries. Additionally, Cynthia Domingue sought to recover damages on behalf of her other minor son, Jiles Daniel Comeaux. Included as named defendants were Harlton K. Stanley, Carolyn Chevalier Stanley, and Empire Construction Company of Glenmora, Inc. (of which Mr. Stanley was the president), owners of the property on which the accident occurred. These owners filed a motion for summary judgment contending that La.R.S. 9:2791 and La. R.S. 9:2795, the recreational use statutes, granted them immunity from liability for the accident. The trial court granted the motion and dismissed the plaintiffs' claims against these defendants. The plaintiffs have appealed that judgment.

DISCUSSION OF THE RECORD
In their petition for damages, the plaintiffs alleged the following circumstances giving rise to the death of Tance and the injuries of Mr. Domingue:
On July 4, 1997, plaintiff, Brian Paul Domingue was operating a 4 wheeler ATV and had his son seated in front of him as a passenger.... Plaintiff and his son had started out on the morning in question from a campsite located on the property adjacent to the property owned by defendants, Harlton K. Stanley and Carolyn Chevalier Stanley. Accompanying them on other ATVs were Cynthia Domingue and her son, Jiles Comeaux, and also the brother of plaintiff, Blaine Domingue and his son. The group of three (3) ATVs proceeded onto the property owned by defendants and first stopped at a small pond or lake located on the property. The children were allowed to go swimming and then the three (3) ATVs started off again. The group encountered a dirt or gravel road and then went along the road until they encountered what appeared to be an established and well-worn motorcycle or ATV trail. Brian Paul Domingue proceeded first with his ATV and was followed by his brother, Blaine Domingue on his ATV. Brian Paul Domingue proceeded down a small hill into a level area and then proceeded up a hill on what he believed to be a well established motorcycle or ATV trail. Plaintiff suddenly encountered an unexpected *846 and unforseen drop-off. His ATV plunged twenty-five (25') feet to the bottom of the ravine.
The plaintiffs alleged that the accident was caused solely by the negligence of the defendants in several respects, including the failure to warn ATV operators of the sudden and unexpected drop-off of the ravine where the accident occurred.
In support of their motion for summary judgment, the defendants submitted, among other exhibits, the affidavit of Mr. Stanley and excerpts from discovery depositions of the plaintiffs. In his affidavit, Mr. Stanley described the area in which the accident occurred as being "an undeveloped, non-residential, rural land area ." Mr. Domingue testified in his deposition that he had ridden in the area probably forty to fifty times over a period of three years, although he had never ridden in the exact spot where the accident occurred. Additionally, he testified that he often camped out in the area and described the camp area as being "wooded" with "trails everywhere." Mr. Domingue further acknowledged that he never sought permission from anyone to use the property to operate his ATV.
In opposition to the motion for summary judgment, the plaintiffs submitted excerpts from Mr. Stanley's discovery deposition. In that deposition, Mr. Stanley agreed that ATV trails traversed the woods coming into his property and acknowledged the presence of ravines on his property in the area Mr. Domingue identified as the accident site. According to Mr. Stanley, the ravine into which Mr. Domingue's ATV fell was created by erosion from running water, rainwater, and "other natural causes."
Mr. Stanley further testified that he had posted the property and "never gave nobody permission to ride on that property." He prohibited local children, and even his own children, from riding on the property because to do so "would encourage other people." Still, he was aware that individuals operating ATVs and other motorized vehicles were using his property, but he testified that trying to keep them off "was a battle." He eventually hired someone full time on weekends to patrol the area.
Mr. Stanley's refusal to give anyone permission to use the property for ATV recreational purposes forms the foundation of the plaintiffs' argument that the defendants have no immunity under the cited statutes. According to the plaintiffs, a prerequisite to the application of the recreational use statutes is the owner's permission to use the property for recreational purposes. The trial court rejected this argument, stating that "[t]o hold otherwise would mean, in effect, that a trespasser without permission and in the process of committing an illegal act would have more rights than an individual who is not trespassing and who obtained permission to use the property. The court does not believe that the legislature ... intended to give greater rights to trespassers than it gives to people lawfully using property."

OPINION
La.R.S. 9:2791 and La.R.S. 9:2795 relate to the liability of an owner of property that is used for recreational purposes and should be read in pari materia. Keelen v. State, Dep't of Culture, Recreation & Tourism, 463 So.2d 1287 (La.1985). La. R.S. 9:2791 refers to the liability of an owner of property that is not used primarily for commercial recreational purposes, while La.R.S. 9:2795 refers to the liability of an owner of property that is used primarily for recreational purposes. Id.
La.R.S. 9:2791 provides:
A. An owner, lessee, or occupant of premises owes no duty of care to keep *847 such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give [sic] permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of the Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
D. The limitation of liability extended by this Section to the owner, lessee, or occupant of premises shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to persons other than the entire public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public.
Based on the evidence before us, we conclude that La.R.S. 9:2791 is the applicable statute in this litigation.
In Ratcliff v. Town of Mandeville, 502 So.2d 566, 567 (La.1987), the supreme court stated:
This court has described two factors to consider when determining whether the immunity provided by R.S. 9:2791 and 9:2795 is applicable to a given set of facts. First, the property where the injury occurred must be an undeveloped, nonresidential rural or semi-rural land area. Second, the injury itself must be the result of recreation that can be pursued in the "true outdoors."
The presence of these two factors in this litigation is undisputed. However, the plaintiffs would add a third factor, the owners' permission to use the property, as a prerequisite to the application of the recreational use statutes.
In Verdin v. Louisiana Land & Exploration Co., 96-1815 (La.App. 4 Cir. 3/12/97); 693 So.2d 162, writs denied, 97-1581, 97-1598 (La.9/26/97); 701 So.2d 994, the plaintiffs claimed they suffered injuries when the skiff in which they were riding hit a concrete survey marker placed by the defendant at the corner of the defendant's property in a marshy area in an open bay. The edges of the property were posted. The defendant claimed immunity as the owner of property used for recreational purposes. The plaintiffs claimed that the defendant was not entitled to immunity for several reasons, including the absence of permission for them to engage in any recreational use of the bay. In affirming the trial court's finding of immunity, the fourth circuit took issue with the anomalous effect of imposing on a landowner "a greater duty to a party who goes onto his land for recreational purposes without his permission than to a person who goes onto his land for recreational purposes with his *848 permission." Id. at 169. After analyzing La .R.S. 9:2791 and applicable jurisprudence, the court stated:
[T]he record is replete with evidence that the area where the accident occurred in the instant case was widely used by the general public for recreational purposes, despite the fact that [the defendant] posted the area and considered the persons using the property as trespassers. Although [the defendant] did not invite the public to use the property for recreational fishing purposes, even the witnesses testifying on behalf of the [plaintiffs] at trial admitted that they frequently use the area. One witness had used the area the very day he testified. Thus, we find that the general public was able to use this land for recreational purposes and that [the defendant] is therefore entitled to the benefits of the recreational use immunity statutes.
Id. at 170 (emphasis added).
We agree with the analysis and result of Verdin. The first sentence of La.R.S. 9:2791(A) states that "[a]n owner... of premises owes no duty of care to keep such premises safe for entry or use by others ... or to give warning of any hazardous conditions ... on such premises to persons entering" for recreational purposes. This sentence does not restrict the application of the immunity from liability to those "others" or "persons entering" who were first given permission.
The second sentence of La.R.S. 9:2791(A) states that "[i]f such an owner... give [sic] permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted." (Emphasis added.) We do not read that sentence to mean that the immunity applies only if the owner gives permission to a person to enter the premises for recreational purposes. Rather, we read that sentence to mean that the immunity applies even if the owner gives permission to a person to enter the premises for recreational purposes so that the permission does not eviscerate the immunity as stated in the first sentence. Otherwise, the first sentence would be superfluous. Additionally, the second sentence functions to relieve the landowner not only of a duty of care regarding the condition of the land but also of responsibility for injuries caused by a person to whom permission is granted. As stated in Verdin, 693 So.2d at 169 n.5:
The [plaintiffs] would ignore the fact that the first sentence of the provision expressly refers to "others" without qualification, logically meaning all others. We interpret the second sentence, not to limit the persons against whom the immunity applies, but to clarify the fact that the immunity applies even when the injured party had the landowner's permission to enter the propertyprobably an allusion to the different levels of duty owed to invitees as opposed to trespassers under the old law. In our view, the only reason the legislature failed to specifically address a landowners['] duty to people without permission to enter the property is that the statute is obviously designed to apply in that case.
Verdin also relied in part on our case of LaCroix v. State, Department of Transportation, 477 So.2d 1246 (La.App. 3 Cir.), *849 writ denied, 478 So.2d 1237 (La.1985).[1] In LaCroix, a minor was seriously injured when she dove from the inside of a culvert into a creek and struck her head either against an object in the water or on the bottom of the creek. The father of the injured girl filed suit against the State, Department of Transportation and Development. Finding that the DOTD was entitled to immunity, we stated:
Clearly, this accident took place in a rural setting. Because of this site's popularity, we believe it warrants being termed a recreational area. Members of the general public swam in this creek without charge. Admittedly, the State did not invite individuals to swim at this site and considered individuals who did as trespassers. However, in our view, this fact does not preclude the State from enjoying the benefit of the immunity provided by La.R.S. 9:2791 and 2795. Irrespective of whether or not the general public was invited to swim at this location, the fact remains that they were able to enjoy the use of this property as a recreational area.

Id. at 1250 (emphasis added).
As in Verdin and LaCroix, the plaintiffs were able to and did use the defendants' property for recreational purposes. However, the plaintiffs urge that Verdin is distinguishable because the recreational use in Verdin was at least tolerated. Contrary to this assertion, the Verdin court explained that the defendant posted the area and considered persons using the property to be trespassers, as did the defendants in the instant case. The fact that the defendants in the instant case also hired someone to patrol the area does not distinguish this case in any meaningful way from either Verdin or LaCroixthat additional measure was nothing more than a different means of achieving the same end of advising the public of the private nature of the property.
In support of their position, the plaintiffs also point us to our decision in Craig v. Sepulvado, 97-1076 (La.App. 3 Cir. 2/18/98); 709 So.2d 229, writ denied, 98-0729 (La.5/1/98); 718 So.2d 414, in which we found the recreational use statutes inapplicable in a case in which there was no evidence to indicate that the landowner intended the public to use her land for the recreational purpose at issue. In that case, a minor was accidentally shot in the foot by another minor while hunting on the property of one of the defendants. This defendant landowner, who was also the grandmother of the minor who was holding the gun when it discharged, contended that the recreational use statutes provided her immunity because the minor and his friends were engaged in recreational activity on her property. We found these statutes inapplicable, stating:
In Monteville v. Terrebonne Parish Consol. Government, 567 So.2d 1097 (La.1990), the supreme court held a landowner "who does not evidence an intent to permit the public to enter without charge for recreational use may not invoke the recreational use statute's protective benefits against liability." Id. at 1105. As the plaintiffs point out in their brief, the purpose for which the recreational use immunity statutes were adopted was "to induce private owners of large acreage to open expanses of undeveloped lands for public outdoor, open land recreational purposes." Id. at 1098; see also Verdin v. Louisiana Land and Exploration Co., 96-1815 (La. App. 4 Cir. 3/12/97); 693 So.2d 162, 165. *850 Here, there is no evidence [the defendant] intended the public to use her land for hunting. In fact, at her deposition, she said "I give my grandkids, I give them the authority to shoot squirrels back there." When asked if by "them" she was referring to "the kids," [the defendant] made it clear who she allowed on her land for hunting purposes: "my grandkids, yes." The factual circumstances of this case, as reflected in the record, clearly contradict the defendants' assertion that [this defendant] is protected by La.R.S. 9:2795, et seq.

Id. at 230-31 (alteration in original).
To the extent that Craig held that immunity is applicable only when there is evidence of an intent to permit the entire public to use the land, as opposed to an intent to allow only certain individuals, such as the grandchildren, to use the land, we respectfully disagree. La.R.S. 9:2791(D) expressly rejects such a requirement by providing that "[t]he limitation of liability ... shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to persons other than the entire public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public." (Emphasis added.) Subsection D of La.R.S. 9:2791 and Subsection F of La.R.S. 9:2795 (which contains the same language as La.R.S. 9:2791(D)) were added by Acts 1989, No. 534, § 1, before the accident and injury in Craig occurred. Thus, this amendment was applicable at the time of that case. Moreover, Monteville v. Terrebonne Parish Consolidated Government, 567 So.2d 1097 (La.1990), the case upon which we relied in Craig to find no immunity, involved an accident and injury that occurred prior to the amendment.
In Monteville, the precise issue before the supreme court was whether a parish government could claim limited tort immunity under the recreational use statutes as a shield against liability to a boatman who was injured by a premises defect in a boat ramp at the parish's public boat launching and vehicle/trailer parking facility. The court held: "The Recreational Use Statutes were enacted to induce private owners of large acreages to open expanses of undeveloped lands for public outdoor, open land recreational purposes and may not be applied to immunize the state or its subdivisions from tort liability." Id. at 1098. The court went on to note that "[e]ven if the premises ... were owned by a private individual, it would not qualify as a large tract suitable for and opened for one of the recreational purposes specified by the Recreational Use Statutes." Id. In any event, the court concluded that it was not shown that the boatman entered the premises for a recreational rather than commercial or work-related purpose.
The court in Monteville explained that "[t]he stated goal of the Recreational Use Statutes is `to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.'" Id. at 1101.
Moreover, an owner who does not evidence an intent to permit the public to enter without charge for recreational use may not invoke the recreational use statute's protective benefits against liability. Gibson v. Keith, 492 A.2d 241 (Del.1985). This case arose from a swimming accident at a water hole in a gravel pit in an isolated area. The plaintiff, a 17 year old minor, suffered paralytic injuries when he dove into shallow water from a rope swing affixed to a nearby tree. The defendants denied giving him permission to enter and swim in the borrow pit. The Delaware *851 Supreme Court held that the recreational use statute may only be invoked to limit the liability of real property owners who directly or indirectly invite or permit without charge the public at large to use their property for recreational purposes. See also, LePoidevin v. Wilson, 111 Wis.2d 116, 330 N.W.2d 555, 47 A.L.R.4th 247 (1983) (recreational use statutes not applicable where owner opened land to social guest but not to public).
Id. at 1105.
However, as set forth above, the accident and injuries in the Monteville case occurred prior to the 1989 amendment which added Subsection D to La.R.S. 9:2791 and Subsection F to La.R.S. 9:2795. In Dear v. Crosby Chemicals, Inc., 95-1309 (La.App. 3 Cir. 3/6/96); 670 So.2d 775, writ denied, 96-1267 (La.6/21/96); 675 So.2d 1091, the plaintiffs argued that analyzing this amendment to mean that immunity applied, even if less than all of the public were granted access to property, would conflict with the original purpose of the statute of encouraging owners of land to make land and water areas available to the public for recreational purposes. We stated: "We agree that [this amendment is] not in accord with the original purpose of the statutes as enunciated in the cases. However, the legislature has seen fit to amend these statutes and provide that there is no liability on the part of a person who leases to someone else for recreational purposes who later limits the use of the land to less than all the public. Obviously, the legislature intended to extend the immunity some more. We must interpret the law as it is written." Id. at 777. (We note that the legislature has further expanded the immunity since the Monteville case by amending La.R.S. 9:2795 by Acts 1996, 1st Ex.Sess., No. 75, § 1, to extend the limitation of liability "to any lands owned, leased, or managed as a public park by the state or any of its political subdivisions and which is used for recreational purposes." See La.R.S. 9:2795(E)(2)(a).) Thus, it is clear that granting permission to only certain persons as opposed to the public in general does not prohibit application of the recreational use immunity.
A motion for summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). In the instant case, the facts are not in dispute. The plaintiffs were able to and did in fact enjoy the use of the defendants' property as recreational property, regardless of whether they were invited to do so. Finding no permission requirement explicitly in or even implicitly grafted onto La.R.S. 9:2791, we hold that, as a matter of law, the defendants are entitled to immunity. Therefore, we affirm the summary judgment granted by the trial court.

DISPOSITION
For the foregoing reasons, we affirm the summary judgment and assess all costs of this appeal to Brian Paul Domingue and Cynthia Domingue.
AFFIRMED.
NOTES
[1] We note that LaCroix was decided prior to our supreme court's decision in Monteville v. Terrebonne Parish Consolidated Government, 567 So.2d 1097 (La.1990), which held that the recreational use statutes could not be applied to immunize the state from tort liability.