PENZATO, J.
Plaintiffs/Appellants, Shawn P. Doyle and Thyme B. Doyle, individually, and on behalf of their minor children, Brady Doyle, Shawn Michael Doyle, and Maggie Grace Doyle, and Defendants/Appellants, Lonesome Development, LLC and Nautilus Insurance Company, appeal the trial court's judgment granting summary judgment *717 in favor of Appellee, Natchez Trace Property Owners Association, Inc., and dismissing plaintiffs' claims against Natchez Trace. For the reasons that follow, we affirm, in part, and reverse, in part, the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
On March 16, 2014, the minor children, Brady, Shawn Michael, and Maggie Grace, were playing soccer directly behind their home with other children in a common area of the Natchez Trace subdivision located in Covington, Louisiana, when a rotten tree fell on Brady Doyle causing him severe injuries. Plaintiffs filed suit against Lonesome Development, LLC (Lonesome), Natchez Trace Property Owners Association, Inc. (Natchez Trace), Renaissance Property Management (Renaissance), and their insurers.[1] Plaintiffs alleged that both Lonesome and Natchez Trace, the homeowners' association, were responsible for maintaining and keeping in good repair the common areas of the subdivision pursuant to a recorded Dedication of Servitudes, Easements and Restrictive Covenants (Restrictive Covenants). Plaintiffs also claimed that Lonesome, Natchez Trace, and Renaissance had responsibility for, custody of, and control and garde over the rotten tree and knew or should have known that the rotten tree posed an unreasonable risk of harm to those in the common areas.
Lonesome originally owned and developed the Natchez Trace subdivision in 2006. At the same time, Lonesome created Natchez Trace as a non-profit corporation for the "development, management, regulation, operation and maintenance" of the common areas and other areas of the subdivision. Timothy Henning and Don McMath, both managing members of Lonesome, were the original directors of Natchez Trace. On February 17, 2012, Lonesome transferred the Natchez Trace subdivision to Natchez Trace pursuant to the Restrictive Covenants, less seventeen parcels of land. Mr. Henning signed the Act of Transfer as the manager of Lonesome and as the authorized agent of Natchez Trace. On September 29, 2012, Natchez Trace entered into a Property Management Agreement with Renaissance to manage the homeowners' association. Renaissance agreed to be "responsible for the management, operation and maintenance of properties owned, dedicated or reserved" to Natchez Trace.
Plaintiffs amended their petition claiming that because the quarterly assessments they paid to Natchez Trace were used to pay Renaissance for its maintenance obligation of the common areas, plaintiffs were either direct beneficiaries or third-party beneficiaries of the contract between Natchez Trace and Renaissance. Plaintiffs also alleged that because they were required to pay quarterly dues for the right to use the common areas for recreational purposes, the common areas are commercial recreational facilities.
Lonesome and its insurer (collectively "Lonesome") filed a motion for summary judgment on July 28, 2015, claiming that it was entitled immunity pursuant to the Recreational Use Immunity Statutes, La. R.S. 9:2791 and 9:2795. After a hearing, the trial court signed a judgment denying the motion for summary judgment on April 28, 2016. Lonesome filed a second motion for summary judgment on October 31, 2016. Natchez Trace and Renaissance also filed a motion for summary judgment *718 claiming virtually identical allegations, asserting entitlement to immunity from plaintiffs' delictual claims pursuant to the Recreational Use Immunity Statutes. Plaintiffs opposed both motions for summary judgment in a single opposition.
On January 19, 2017, the trial court held a hearing and orally denied the motions for summary judgment filed by Lonesome and Renaissance. The trial court granted the motion for summary judgment filed by Natchez Trace. On February 8, 2017, the trial court signed a judgment denying Renaissance's motion for summary judgment and granting summary judgment in favor of Natchez Trace. On February 9, 2017, the trial court signed a judgment denying Lonesome's motion for summary judgment. Lonesome, its insurer, and plaintiffs filed devolutive appeals from the granting of Natchez Trace's motion for summary judgment. On November 30, 2017, this court, recognizing a lack of decretal language in the judgment, issued an interim order remanding the matter to the trial court to consider whether the February 8, 2017 judgment may be amended. On December 11, 2017, the trial court signed an amended judgment, denying summary judgment as to Lonesome and Renaissance, granting summary judgment as to Natchez Trace, and dismissing all of plaintiffs' claims against Natchez Trace. The December 11, 2017 amended judgment is precise, definite, and certain, and does contain the requisite decretal language. See Johnson v. Mount Pilgrim Baptist Church , 2005-0337 (La. App. 1 Cir. 3/24/06), 934 So.2d 66, 67. Therefore, we maintain this appeal.
SUMMARY JUDGMENT
Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action .... and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2).[2] In reviewing the trial court's decision on a motion for summary judgment, this court applies a de novo standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 750-51.
The burden of proof is on the mover. If the mover will not bear the burden of proof at trial, the mover's burden does not require him to negate all essential elements of the adverse party's claim, but only to point out to the court the absence of factual support for one or more of the elements necessary to the adverse party's claim. Thereafter, the burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
"After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).
A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach *719 only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.
Jackson v. City of New Orleans, 2012-2742 (La. 1/28/14), 144 So.3d 876, 882, cert. denied , --- U.S. ----, 135 S.Ct. 197, 190 L.Ed.2d 130 (2014).
In deciding a summary judgment motion, it must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material fact issues. If not, summary judgment must be denied in favor of a trial on the merits. A fact is material if its existence or nonexistence is essential to the plaintiff's cause of action under the applicable theory of recovery. Therefore, we must conduct a de novo review of the evidence submitted with the motion for summary judgment and determine if there are no genuine issues of material fact.
LAW AND DISCUSSION
Applicability of Recreational Use Immunity Statutes
The trial court determined that Natchez Trace was entitled to immunity under the Recreational Use Immunity Statutes. Plaintiffs and Lonesome assert that the trial court erred in finding that the Recreational Use Immunity Statutes applied to Natchez Trace. Plaintiffs claim that the design, placement, and maintenance of the common areas were for commercial profit and benefitted Natchez Trace, thereby excluding the application of the Recreational Use Immunity Statutes. They further assert that because the right to use the common areas was exclusively limited to homeowners who paid quarterly dues, Natchez Trace is not entitled to immunity. Lonesome argues that because the accident occurred in a gated residential community, the Recreational Use Immunity Statutes do not apply.
Owners and operators of property that is used for recreational purposes are entitled to immunity from tortious liability pursuant to La. R.S. 9:2791 and 9:2795. These statutes relate to the same subject matter and are to be read together. Keelen v. State, Dept. of Culture, Recreation and Tourism, 463 So.2d 1287, 1289 (La. 1985). Louisiana Revised Statutes 9:2791 and 9:2795 were originally enacted as Act 248 of 1964 and Act 615 of 1975. The legislature passed these two remarkably similar statutes designed to encourage landowners to open their lands, on a basically nonprofit basis for recreation. Richard v. Hall, 2003-1488 (La. 4/23/04), 874 So.2d 131, 147-48.
This court analyzed these two statutes in Fournerat v. Farm Bureau Ins. Co., 2011-1344 (La. App. 1 Cir. 9/21/12), 104 So.3d 76, 81, writ denied , 2012-2148 (La. 11/21/12), 102 So.3d 59, and determined that if there is a conflict between the statutes, the later enacted one, La. R.S. 9:2795, controls. This court also noted that the Recreational Use Immunity Statutes are in derogation of common or natural rights and, therefore, are to be strictly interpreted, and must not be extended beyond their obvious meaning. Fournerat, 104 So.3d at 81, citing Monteville v. Terrebonne Parish Consol. Government, 567 So.2d 1097, 1100 (La. 1990). However, the enactment of La. R.S. 9:2795, a second more expansive immunity statute, evidences an intent on the Legislature's part that these statutes are to grant a broad immunity from liability. Fournerat , 104 So.3d at 81, citing Richard, 874 So.2d at 151.
Louisiana Revised Statute 9:2791 provides:
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, *720 sightseeing, or boating or to give warning of any hazardous conditions, use of, structure, or activities on such premises to persons entering for such purposes, whether the hazardous condition or instrumentality causing the harm is one normally encountered in the true outdoors or one created by the placement of structures or conduct of commercial activities on the premises. If such an owner, lessee, or occupant gives permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
D. The limitation of liability extended by this Section to the owner, lessee, or occupant of premises shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to persons other than the entire public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public.
(Emphasis added).
The notes to this statute entitled "Repeal by Implication" state:
< Provisions in subsec. B of this section, relating to commercial or non-commercial use of owner or lessee seeking immunity, were found to be in conflict with later-enacted provisions of R.S. 9:2795(B), and therefore repealed by implication. Richard v. Hall, 874 So.2d 131, 2003-1488 (La. 4/23/04), rehearing denied .... See Notes of Decisions following this section in LSA.>
The later-enacted statute, La. R.S. 9:2795, pertinently provides:
A. As used in this Section:
(1) "Land" means urban or rural land, roads, water, watercourses, private ways or buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes but is not limited to any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized, or nonmotorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, roller skating, roller blading, skate boarding, sledding, snowmobiling, snow skiing, summer and winter sports, or viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
*721 (5) "Person" means individuals regardless of age.
B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purposes.
(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(c) Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made.
(2) The provisions of this Subsection shall apply to owners of commercial recreational developments or facilities for injury to persons or property arising out of the commercial recreational activity permitted at the recreational development or facility that occurs on land which does not comprise the commercial recreational development or facility and over which the owner has no control when the recreational activity commences, occurs, or terminates on the commercial recreational development or facility.
* * *
F. The limitation of liability extended by this Section to the owner, lessee, or occupant of premises shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to persons other than the entire public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public.
(Emphasis added).
Louisiana Revised Statute 9:2791 provides immunity to an owner, lessee, or occupant of "premises", which is defined as "lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon", for injuries to persons using the premises for "hunting, fishing, camping, hiking, sightseeing, or boating." Louisiana Revised Statute 9:2795 provides immunity to an "owner" of "land" being used for "recreational purposes" against liability for injury to persons caused by a defect in the land, whether naturally occurring or manmade. An "owner" is defined as the "possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." La. R.S. 9:2795(A)(2). "Land" is defined, in pertinent part, as "urban or rural land." La. R.S. 9:2795(A)(1). "Recreational purposes" is defined as including, but not limited to:
any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized, or nonmotorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, roller skating, roller blading, skate boarding, sledding, snowmobiling, snow skiing, summer and winter sports, or viewing or enjoying historical, archaeological, scenic, or scientific sites.
La. R.S. 9:2795(A)(3).
There is no contention by either plaintiffs or Lonesome that Natchez Trace does not qualify as an "owner" as it was an "occupant or person in control of the premises." Therefore, we first address whether Brady Doyle was engaged in a "recreational purpose" as defined by La. R.S. 9:2795(A)(3). It is undisputed that Brady Doyle was playing soccer with his *722 siblings and friends at the time of the accident. Neither plaintiffs nor Lonesome assert that soccer is excluded from the definition of "recreational purpose." However, for the sake of completeness, we discuss this parameter. The jurisprudence interpreting the above statutes recognizes that the definition of "recreational purposes" is a nonexclusive list and that activities not specifically listed are included in the definition. In Benoit v. City of Lake Charles , 2005-89 (La. App. 3 Cir. 7/20/05), 907 So.2d 931, 935-36, writ denied , 2005-2154 (La. 3/17/06), 925 So.2d 539, the court held that baseball must be considered a summer sport and included within listed recreational purposes, even though not specifically listed. In Webb v. Parish of St. Tammany, 2006-0849 (La. App. 1 Cir. 2/9/07), 959 So.2d 921, 925, writ denied, 2007-0521 (La. 4/27/07), 955 So.2d 695, the court recognized that softball was a recreational activity even though the plaintiff was injured after the game was completed and he was exiting the park. In Sexson v. Boise Cascade Corp., 2013 WL 3894106, at *6 (W.D. La. July 25, 2013), the court held that cross-country running, even though not specifically listed, did fall within the "recreational purposes" definition. We find soccer to be similar to the above activities, that even though not specifically listed, qualifies as a recreational activity under the broad list of activities and could specifically be considered a summer or winter sport.
The final parameter is whether the injury occurred on "land" as defined by the Recreational Use Statutes. Lonesome argues that Natchez Trace is not entitled to immunity because the common area in question is in a gated residential community, and relies upon an historical three-part jurisprudential test. This jurisprudential test was comprised of the following: (1) the land upon which the injury occurs must be undeveloped, non-residential, and rural or semi-rural; (2) the injury itself must be the result of recreation that can be pursued in the "true outdoors"; (3) the injury-causing instrumentality must be of the type normally encountered in the "true outdoors" and not "of the type usually found in someone's backyard." Deumite v. State, 94-1210 (La. App. 1 Cir. 2/14/97), 692 So.2d 1127, writ denied, 97-1409 (La. 9/26/97), 701 So.2d 984. Lonesome admits that some of these factors have been legislatively modified, but claims that the non-residential requirement has never been changed.
We disagree with Lonesome's interpretation of the amendments. In Fournerat, 104 So.3d at 82, we determined that the 2001 amendment to La. R.S. 9:2795 adding the phrase "urban or rural" to section (A) and the phrase "whether urban or rural" to section (E)(2)(a) effectively removed the first prong of the test. Additionally, Benoit, 907 So.2d at 935, held that a developed park located in the city did fall within the definition of "land" after the 2001 amendment revised the statute to include "urban or rural." In Sexson, 2013 WL 3894106, at *5, the court determined that the developed land of a paper mill where a high school cross country meet was held also was included in the definition of "land" after the 2001 amendment. The court also noted that citation to case law prior to the amendment requiring land to be "open and undeveloped" was no longer persuasive. Id. Therefore, we conclude that a developed, residential area falls within the definition of "land" after the 2001 amendment to La. R.S. 9:2795 adding the phrase "urban or rural" to section (A) and the phrase "whether urban or rural" to section (E)(2)(a),
Lonesome also asserts that the Recreational Use Immunity Statutes do not apply because Brady Doyle was injured while playing soccer with other children *723 in the common area of a gated residential community which was not open to the public, but restricted to the property owners and their guests. Plaintiffs also claim that Natchez Trace was not entitled to immunity because the right to use the common areas was exclusively limited to homeowners who paid quarterly dues.
The argument that immunity is applicable only when there is evidence of an intent to permit the entire public to use the land, as opposed to an intent to allow only certain individuals, was specifically rejected in Domingue v. Stanley, 2001-0041 (La. App. 3 Cir. 5/2/01), 784 So.2d 844, 850. In that case, the court noted that both La. R.S. 9:2791(D) and La. R.S. 9:2795(F) contain the same language that was added by Acts 1989, No. 534, § 1 stating that "[t]he limitation of liability ... shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to persons other than the entire public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public ." Domingue, 784 So.2d at 850. We agree with Domingue that the plain language of both statutes does not restrict immunity only to situations where there is evidence of an intent to permit the entire public to use the land.
Therefore, the Recreational Use Immunity Statutes are applicable to Natchez Trace unless one of the exceptions applies. The only exceptions that will defeat immunity are (1) the willful or malicious failure to warn against a dangerous condition; and (2) operating a commercial recreational development for profit. La. R.S. 9:2795(B)(1). See Souza v. St. Tammany Parish, 2011-2198 (La. App. 1 Cir. 6/8/12), 93 So.3d 745, 750 ; see also Van Pelt v. Morgan City Power Boat Ass'n, Inc., 489 So.2d 1346, 1351 (La. App. 1 Cir.), writ granted, 493 So.2d 627 (La. 1986)cause dismissed because of compromise.
Commercial Enterprise Exception
Plaintiffs argue that there is evidence that the subdivision and common areas were "commercial recreational developments or facilities" within the meaning of the Recreational Use Immunity Statutes, and Natchez Trace was thereby, not entitled to immunity due to this exception. It is undisputed that Lonesome developed the subdivision. Mr. Henning, one of the owners of Lonesome, testified that when the subdivision was first built the goal was to sell all the lots to either builders or individuals to build houses and make a profit. He stated that the lakes were required for drainage but that other amenities were added, such as the pool and greenspace, because it made the subdivision more desirable, allowing the developer to either sell more lots or to sell them faster. Lonesome created Natchez Trace, a non-profit entity, as the homeowners' association to maintain those common areas and other areas of the subdivision. Plaintiffs claim that the inclusion of the common areas in the Natchez Trace subdivision, including the design, placement, and maintenance, served the direct economic benefit and commercial interests of Natchez Trace. The evidence shows that the homeowners of Natchez Trace subdivision did pay a fee to Natchez Trace for the maintenance and improvements, including the common areas.
This court specifically stated in Van Pelt, supra, "the fact that an activity generates income does not prevent the owner from enjoying the benefit of [La.] R.S. 9:2795, which clearly provides that an owner may charge a fee for the right to use his land and still not incur liability." We further noted that in previous cases, that intention to derive a profit is an essential ingredient in a commercial activity.
*724 Van Pelt, 489 So.2d at 1351, citing Keelen, 463 So.2d at 1289 ; Pratt v. State, 408 So.2d 336, 342 (La. App. 3 Cir. 1981), writ denied, 412 So.2d 1098 (La. 1982) ; Thomas v. Jeane, 411 So.2d 744, 747 (La. App. 3 Cir. 1982). Therefore, we determined in Van Pelt that a boat race sponsor which collected admission fees was not a "commercial enterprise" under La. R.S. 9:2795 because the sponsor was a nonprofit corporation.
The Louisiana Supreme court addressed the commercial enterprise exception at length in Richard, supra, where a duck hunter was accidentally shot and killed by another hunter. There was no dispute that the owner of the property operated the premises at issue as a commercial enterprise for profit. However, the issue was the liability of a corporation which paid for hunting privileges on the property for use by certain of its officers. It was one of the corporation's officers who fatally shot and killed another hunter, who was hunting through a duck lease held by another individual. The Supreme Court held that immunity under La. R.S. 9:2791 clearly does not apply when the premises were used principally for a commercial recreational enterprise for profit. However, the Supreme Court found that La. R.S. 9:2795(B)(1) supported an interpretation that an owner, lessee or occupant qualifies for immunity where his use of the premises is not principally for a commercial recreational purpose. Richard, 874 So.2d at 148. The Supreme Court held that La. R.S. 9:2795 applied, since Acts 1975, No. 615, § 7 specifically provides that all parts of laws in conflict with La. R.S. 9:2795 are repealed. Richard, 874 So.2d at 150. Therefore, the corporation was entitled to immunity pursuant to La. R.S. 9:2795 because it did not utilize the premises for commercial profit, even though it leased the property from a lessor who did utilize the premises primarily for profit from recreational purposes. Accordingly, pursuant to La. R.S. 9:2795, it is the owner, lessee, or occupant's use of the premises, not the underlying classification of the premises as a commercial recreational enterprise for profit, that determines the availability of immunity.
In Moore v. Rice-Land Lumber Co., 2014-500 (La. App. 3 Cir. 11/5/14), 150 So.3d 657, writ denied, 2014-2559 (La. 2/27/15), 160 So.3d 583, one of the defendants owned 50,000 acres that it used for timber operations. The defendant also leased the land for hunting purposes to a hunting club. The decedent was part of the hunting club and was shot and killed by another hunter. In analyzing the nature of the entities involved, the court found that the owner of the land made its profit from commercial timber sales on the property, and the hunting leases were only a very small portion of the income for the property. The court also found that the hunting club did not operate as a commercial hunting club for profit, but rather the amount of dues just covered expenses. Because neither entity used the premises principally as a commercial recreational enterprise for profit, both entities were entitled to recreation use immunity. Moore, 150 So.3d at 663-64.
It is Natchez Trace's use of the premises that is currently at issue. The area where Brady Doyle's injury occurred, which is adjacent to a pond, was used by the Natchez Trace homeowners for many recreational activities. There was a common area behind the fence on the Doyle's property that led to the pond. Children played in the area, including sports such as soccer and football; residents would fish and kayak in the pond; and others would walk around the area. The evidence in this matter is that Natchez Trace is a non-profit corporation. Plaintiffs rely on their petition to claim that they paid dues to Natchez Trace "in part to cover the cost of *725 [Natchez Trace's] performance of its duty to maintain the Common Areas and to alleviate any hazardous conditions." Plaintiffs also refer to the deposition of Mr. Henning to assert that the common areas were commercial in nature because the homeowners had to pay dues for the use thereof. Mr. Henning did admit that the homeowners had to pay dues for the use of all the recreational areas. However, although the homeowners paid dues to Natchez Trace for the maintenance of the common areas, there is nothing in the record to establish that Natchez Trace derived a profit from these dues. The dues collected by Natchez Trace were for the exclusive purpose of "promoting the recreation, health, safety, welfare, common benefit, and enjoyment of the Owners and occupants of the Subdivision, and maintaining the Subdivision and improvements therein...," The collection of dues, in and of itself, does not make a homeowners' association a "commercial enterprise." Furthermore, we find that any use by Lonesome, the developer, as alleged by plaintiffs, cannot be imputed to Natchez Trace, a separate entity. Lonesome's use of the premises is not relevant to a determination of the immunity of Natchez Trace. Consequently, we find that Natchez Trace's use of the common areas was not principally for a commercial recreational purpose so as to exclude it from the immunity provided by the Recreational Use Immunity Statutes.
Willful or Malicious Exception
Plaintiffs also assert that under La. R.S. 9:2791(B) there is no immunity for "deliberate and willful or malicious injury to persons or property." Additionally, La. R.S. 9:2795(B)(1) provides that the Recreational Use Immunity Statutes are inapplicable to the "willful or malicious failure to warn against a dangerous condition, use, structure, or activity." Plaintiffs claim that they are not required to prove that any of the defendants intended to cause injury, only that they knowingly acted or failed to act with a conscious indifference to the consequences.
As a general rule, the defendant owes a duty to discover any unreasonably dangerous condition on the premises and either correct it or warn potential victims of its existence. However, this duty does not extend to potentially dangerous conditions which should have been observed by an individual in the exercise of reasonable care or which are as obvious to a property owner as to a visitor. Once a defendant establishes that it was entitled to immunity under La. R.S. 9:2795, the burden of establishing a malicious or willful failure to warn of a dangerous condition shifts to the plaintiffs. Richard v. Louisiana Newpack Shrimp Co., Inc., 2011-309 (La. App. 5 Cir. 12/28/11), 82 So.3d 541, 547-48.
In Price v. Exxon Corp., 1995-0392 (La. App. 1 Cir. 11/9/95), 664 So.2d 1273, plaintiff, a commercial fisherman, struck a submerged pipeline and bulkhead in a lake. There were no warning signs of any type indicating the presence of the submerged obstacle. This court found that the failure to warn had to be "willful" or "malicious", but the court found nothing to indicate maliciousness. The court held that the term "willful" as used in La. R.S. 9:2795"connotes a conscious course of action, in which an action is knowingly taken or not taken, which would likely cause injury, with a conscious indifference to the consequences thereof." Price, 664 So.2d at 1280. In finding there was a willful failure to warn, the court noted that the State had been informed that fishermen reported striking a submerged bulkhead with their boats and was provided with the exact location of the obstacle and informed that the fishermen recommended marking it as a hazard to navigation. Yet, the State *726 made a "conscious and knowing determination to do nothing about the situation." Price, 664 So.2d at 1281. The court found the State's failure to warn against the submerged bulkhead was willful, and therefore, the State was not entitled to recreational immunity.
In Lambert v. State, 40,170 (La. App. 2 Cir. 9/30/05), 912 So.2d 426, 434-35, writs denied, 2005-2310 (La. 4/17/06), 926 So.2d 509 & 2005-2311 (La. 4/17/06), 926 So.2d 509, the court found a material issue of fact as to whether there was a willful failure to warn when evidence showed that there had been at least thirty similar deaths in the same spot since the spillway opened. Signs had been posted on the spillway and boat launch warning of dangerous currents, but after several more deaths, the governing authority installed a pipe and cable fence to close the high-water area during dangerous conditions and a folding sign which, when unfolded, stated that the boat launch was closed. However, at the time of the plaintiffs' deaths, the boat launch remained open and the sign had never been unfolded.
In Souza, supra , plaintiff was injured while riding his bicycle through a tunnel on the Tammany Trace, a 31-mile recreational trail made available to the public for recreational purposes, when he encountered an extremely slippery surface that was covered with mold, mildew, slime or growth. This court examined evidence which included work orders and complaints of slippery areas, but found the work order evidence showed that when the City was notified of the issue, it was remedied on the same day. There was no evidence that the City had knowledge of a dangerous condition on the day of plaintiff's accident or that the City failed to warn of such a condition that day. This court found that plaintiff failed to bear his burden of establishing a malicious or willful failure to warn of a dangerous condition, and the City was afforded recreational use immunity. 93 So.3d at 750. In Moore, supra, the court found there was absolutely no evidence that anyone desired or thought there was a risk that someone might get shot on the logging road, and accordingly, there was no conscious course of action by anyone which resulted in the tragic accident - it was simply that, a tragic accident. 150 So.3d at 662.
Plaintiffs argue that the fact that more than 30 trees (other than the one at issue) had been removed from the subdivision provided knowledge of the dangerous condition of trees throughout the neighborhood. Plaintiffs also argue that Mr. Henning stipulated in the Act of Transfer to Natchez Trace that he had conducted and completed all inspections of the property. Plaintiffs argue that this inspection would have revealed this tree posed a hazard, and that Natchez Trace, through its representative Mr. Henning, knew or should have known of the defective nature of the tree at the time of the transfer and did nothing to alleviate the hazard.
There was no evidence presented as to a time period in which the tree appeared diseased or dying, and plaintiffs have presented no evidence of willful or malicious acts. They argue that it is "common knowledge" that the process of rotting and falling limbs takes years, and cite to their own affidavits for support that it was apparent that the tree at issue was dead or dying.
The evidence before the trial court was that none of the defendants had actual knowledge of the condition of the tree that fell prior to the accident. Mr. Henning, on behalf of Lonesome, testified that he did not know about the tree until weeks after the accident, and by that time, the tree had been removed. Gary Giordano, on behalf of Natchez Trace, testified that while walking along the common areas before *727 the accident, he did not notice the tree was diseased. Susan Fink, on behalf of Renaissance, testified that she did not receive any communication from the Doyles reporting the diseased tree. Both plaintiffs testified that they did not report the tree to Natchez Trace prior to the accident.
Plaintiffs also argue that because Renaissance performed maintenance inspections and removed 30-50 defective trees in 2013, Natchez Trace knew or should have known about this particular tree. We find that none of the evidence presented by plaintiffs rises to the level necessary to prove willful and malicious actions. As this court held in Souza, supra , showing that a defendant addresses work orders and complaints in a timely fashion, does not equate to knowledge of a dangerous condition on the day of a particular accident or that a defendant failed to warn of such a condition. 93 So.3d at 749-50.
The plaintiffs have presented no evidence that Natchez Trace, or anyone for whom it was responsible, desired or thought that there was a risk that this particular tree would cause injury from disease. We find no evidence that there was any conscious course of action by Natchez Trace that resulted in this accident. Therefore, we affirm that portion of the trial court's amended judgment granting summary judgment as to the delictual claims made by plaintiffs against Natchez Trace.[3]
Breach of Contractual Claims
Plaintiffs maintain on appeal that Natchez Trace's motion for summary judgment did not address the contractual claims they asserted against Natchez Trace, and therefore, the trial court was not presented with the opportunity to rule on whether those claims were to be dismissed. Plaintiffs claim that is it unclear from the judgment if the trial court intended the Recreational Use Immunity Statutes to cover the breach of contract claims. Natchez Trace counters that plaintiffs never made a breach of contract claim against it, that the only breach of contract claim was made solely against co-defendant Renaissance, and that the only claims asserted against it sounded in general negligence.
A petition "shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation ... and shall conclude with a prayer for judgment for the relief sought." La. C.C.P. art. 891.
The original petition alleged that pursuant to the Restrictive Covenants both Lonesome and Natchez Trace owned and were responsible for maintaining and keeping in good repair all portions of the common areas in Natchez Trace subdivision, which included the repair and replacement of all dead, rotten, and dangerous trees. Plaintiffs also maintained that, *728 as property owners, they were subject to the Restrictive Covenants and were required to pay dues. Plaintiffs further contended that Lonesome, Natchez Trace, and Renaissance were liable for negligence and "under their respective obligations under the [Restrictive Covenants] or under Renaissance's contract with [Natchez Trace], to avoid the maintenance of an unreasonably hazardous, obviously rotten tree on the Common Area." In their first supplemental and amending petition, plaintiffs alleged that they were direct beneficiaries and/or third-party beneficiaries to the contract between Natchez Trace and Renaissance and that Renaissance breached that contract. Plaintiffs also asserted that Lonesome signed an Act of Transfer transferring some of the common areas to Natchez Trace, and that Natchez Trace had a duty to inspect and maintain the common areas pursuant to the Act of Transfer.
Louisiana has a system of fact pleading, and it is not necessary for a plaintiff to plead the theory of his case in his petition. Ramey v. DeCaire, 2003-1299 (La. 3/19/04), 869 So.2d 114, 118. Fact pleading advances several goals of the petition, such as satisfying the defendant's constitutional guarantee of due process by providing the defendant with fair notice, limiting the issues before the court, and notifying the defendant of the facts upon which the plaintiff bases his claims. Fitzgerald v. Tucker , 98-2313 (La. 6/29/99), 737 So.2d 706, 713. Moreover, every pleading must be construed so as to do substantial justice. La. C.C.P. art. 865.
The Louisiana Homeowners Association Act governs the transactions between a homeowners' association and the property owners. La. R.S. 9:1141.1, et seq. Building restrictions may be established pursuant to La. R.S. 9:1141.5(A). Such building restrictions may "regulate the building standards, specified uses, and improvements of common areas of a homeowners association, including but not limited to the regulation of passage, ingress, and egress upon common areas, streets, and street rights-of-way." La. R.S. 9:1141.5(C). Louisiana Revised Statute 9:1141.8 provides:
The community documents of residential planned communities shall have the force of law between the homeowners association and the individual lot owners and as between individual lot owners. The remedies for breach of any obligation imposed on lot owners or the association shall include damages, injunctions, or such other remedies as are provided by law.
"Community documents" is defined by La. R.S. 9:1141.2(3) as the following:
[T]he articles of incorporation, bylaws, plat, declarations, covenants, conditions, restrictions, rules and regulations, or other written instruments, including any amendment thereto, by which the association has the authority to exercise any of its powers to manage, maintain, or otherwise affect the association property or which otherwise govern the use of association property.
In the case of building restrictions imposed on a subdivision, the restrictions may be likened to a contract among the property owners and the developer. Bordelon v. Homeowners Ass'n of Lake Ramsey, Inc., 2004-1115 (La. App. 1 Cir. 5/6/05), 916 So.2d 179, 183. Documents establishing building restrictions are subject to interpretation and enforcement as contracts. Country Club of Louisiana Prop. Owners Ass'n, Inc. v. Dornier, 96-0898 (La. App. 1 Cir. 2/14/97), 691 So.2d 142, 147.
We disagree with Natchez Trace that all claims asserted against it were in general negligence. We recognize that the original *729 petition and first supplemental and amending petition could have been drafted in a more artful manner. However, the plaintiffs pled sufficient facts in the original petition and first supplemental and amending petition to support their claim that they are either direct beneficiaries or third-party beneficiaries to the Restrictive Covenants, Act of Transfer, and/or the maintenance contract between Natchez Trace and Renaissance.
The motion for summary judgment filed by Natchez Trace did not address the breach of contract claims made by plaintiffs. "A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties." La. C.C.P. art. 966(E). However, a "summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." La. C.C.P. art. 966(F). As there is no request in the motion for summary judgment from relief by Natchez Trace of the contractual claims made against it, the December 11, 2017 amended judgment did not dispose of those claims and is only a partial summary judgment. Therefore, we reverse the summary judgment to the extent it was granted with respect to the contractual claims made against Natchez Trace and reverse the dismissal of Natchez Trace.
CONCLUSION
For the above and foregoing reasons, the December 11, 2017 amended judgment granting summary judgment on behalf of Natchez Trace Property Owner's Association, Inc., and dismissing the claims of Shawn P. Doyle and Thyme B. Doyle, individually, and on behalf of their minor children, Brady Doyle, Shawn Michael Doyle, and Maggie Grace Doyle, is affirmed, in part, as to the delictual claims, and reversed, in part, as to the contractual claims, made against Natchez Trace Property Owner's Association, Inc. All costs of this appeal are assessed equally against plaintiffs, Shawn P. Doyle and Thyme B. Doyle, and defendant, Natchez Trace Property Owner's Association, Inc.
APPEAL MAINTAINED. AFFIRMED IN PART; REVERSED IN PART.
Holdridge, J. agrees in part and dissents in part for reasons assigned.
I agree in part and dissent in part. I do not find that the Recreational Use Immunity Statutes, La. R.S. 9:2791 and La. R.S. 9:2795, should apply to a homeowners association and its insurer. In this case, the homeowners association was the owner of the green spaces and the recreational areas in a gated residential community. One of the purposes of the homeowners association was the upkeep of the common and recreational areas. All of the homeowners paid dues to the homeowners association to make their subdivision an attractive place to reside, for the enjoyment of their families, and to increase the value of their homes. Having recreational spaces for the children of the subdivision was a benefit provided for by the association. The homeowners association operated as a commercial enterprise that allowed the homeowners who paid dues to have well-maintained green spaces and recreational spaces that benefitted not only their lifestyle, but also benefitted the value of their investment in the subdivision. As a commercial enterprise, the developers and homeowners associations provide for recreational spaces as part of their "for profit" real estate development. The Recreational *730 Use Immunity Statutes should have no applicability to such private commercial developments.

Plaintiffs added the insurer for Renaissance in their second supplemental and amending petition.

Louisiana Code of Civil Procedure Article 966 was amended by Acts 2015, No. 422, and was effective January 1, 2016, so the amendment applies in this case since the motions for summary judgment were filed in October and December 2016.

On this appeal, Lonesome argues orally and in brief that should this court affirm the granting of Natchez Trace's motion for summary judgment, we should reverse the denial of its summary judgment. We have extensively reviewed the appeal filed by Lonesome. Even giving the appeal a broad reading, Lonesome only appealed the granting of the summary judgment to Natchez Trace. Furthermore, Lonesome only assigned as error that the trial court erred in holding that Natchez Trace was entitled to immunity under the Recreational Use Immunity Statutes. Lonesome did not assign as error that the trial court erred in denying its motion for summary judgment, and therefore, it is not before us. See Bihm v. Deca Sys., Inc., 2016-0356 (La. App. 1 Cir. 8/8/17), 226 So.3d 466, 476. Consequently, the only appeal before this court is the trial court's granting of the summary judgment to Natchez Trace.