STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CA 1052

GERARD LACASSIN, INDIVIDUALLY AND ON BEHALF OF
LEIGHTON LACASSIN

VERSUS

STATE OF LOUISIANA, DEPARTMENT OF
WILDLIFE AND FISHERIES

Judgment Rendered: **JUN 0 4 2024** _____

Appealed from the
18th Judicial District Court
In and for the Parish of Pointe Coupee
State of Louisiana
Docket No. 48629

The Honorable Elizabeth A. Engolio, Judge Presiding

| | |
|---|---|
| Blaine J. Barrilleaux<br>Allison Morrow Weaver<br>Brandon O. Wallace<br>Lafayette, Louisiana | Counsel for Plaintiffs/Appellants,<br>Gerard Lacassin and Leighton<br>Lacassin |
| Liz Murrill<br>Attorney General<br>Christopher W. Stidham<br>Special Assistant Attorney General<br>Breann Crane<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee,<br>State of Louisiana, through the<br>Louisiana Department of Wildlife<br>and Fisheries |

BEFORE:  McCLENDON, HESTER, AND MILLER, JJ.

McClendon, J. concurs for the reasons assigned

**MILLER, J.**

Gerard Lacassin and Leighton Lacassin appeal a summary judgment dismissing their claims against the State of Louisiana, Department of Wildlife and Fisheries, without prejudice. For the reasons that follow, we reverse.

## FACTS AND PROCEDURAL HISTORY

On October 7, 2017, Gerard Lacassin and Leighton Lacassin ("Lacassins"), along with two other people, went to Sherburne Wildlife Management Area ("Sherburne") for a hunting trip. Gerard hunted there between 15 and 25 times throughout his life. While driving to the location off of Muddy Road where they would hunt, Gerard drove his vehicle into a sinkhole, which was caused by a collapsed culvert.

Thereafter, on July 16, 2018, Gerard filed a petition individually and on behalf of his minor child, Leighton, against the State of Louisiana, Department of Wildlife and Fisheries ("LDWF"). The petition contained allegations that Gerard and Leighton suffered personal, psychological, and emotional injuries as a result of the accident. He further alleged that LDWF's negligence was the proximate cause of his and Leighton's injuries. LDWF filed its answer on August 27, 2018. Subsequently, on February 28, 2022, Gerard and Leighton filed an amended petition, since Leighton reached the age of majority.

On May 1, 2023, LDWF filed a motion for summary judgment, which was set to be heard on June 2, 2023. LDWF alleged there was no genuine issue of material fact and it was entitled to judgment as a matter of law. First, LDWF contended it had no duty to warn the Lacassins of the presence of the sinkhole because there was no reasonable expectation that a motorist would attempt to park in a clearing that was maintained for pedestrians, and second, the duty to warn under La. R.S. 9:2795(B)(1) does not extend to potentially dangerous conditions which should have been observed by an individual in the exercise of reasonable

2

care or which are as obvious to a property owner as to a visitor.[1] In support of its motion for summary judgment, LDWF attached the affidavit of Anthony Vidrine; excerpts of the deposition of Errol Theriot; excerpts of the deposition of Gerard Lacassin; and the affidavit of Eric Burson.

On May 18, 2023, the Lacassins filed a memorandum in opposition to LDWF's motion for summary judgment. They contended adequate discovery had not been conducted and LDWF's motion should be denied as premature. They further alleged there are genuine issues of material fact – LDWF owed a duty to the Lacassins because it was aware that hunters would traverse the area in their vehicles based on it commonly being used as a parking lot, and the sinkhole at issue was not open and obvious to all that encountered it. In support of its opposition, the Lacassins attached excerpts of the deposition of Errol Theriot; excerpts of the deposition of Gerard Lacassin; the affidavit of Adam Breaux; the affidavit of Toby Mire; and the affidavit of Mathew Tate.

On May 25, 2023, LDWF filed a reply memorandum. LDWF contended the Lacassins had adequate time for discovery. Further, LDWF objected to the affidavits of Adam Breaux, Toby Mire, and Mathew Tate, which were attached in support of the Lacassins' memorandum in opposition to LDWF's motion for summary judgment. LDWF argued that those witnesses were not listed on the Lacassins' witness list nor identified as witnesses in the Lacassins' responses to discovery. LDWF also contended the affidavits were vague and ambiguous and contained inadmissible hearsay. LDWF attached LDWF's second supplemental response to interrogatories and request for production of documents; LDWF's

---

[1] LDWF notes that, in this motion for summary judgment, it did not raise the issue of whether there was a willful or malicious failure to warn against a dangerous condition under La. R.S. 9:2795(B)(1). That issue was before the court in LDWF's prior motion for summary judgment filed on March 28, 2019. The trial court stated that whether there was a willful and malicious failure to warn against a dangerous condition was "an issue that's to be left to the trier of fact" and signed a judgment denying LDWF's prior motion for summary judgment on May 3, 2019.

3

opposition memorandum to a prior motion for summary judgment; an order signed April 25, 2022; emails exchanged between counsel regarding scheduling; LDWF's supplemental responses to initial interrogatories; the Lacassins' witness list; and an order signed July 30, 2021. See La. C.C.P. art. 966(B)(3). However, we note that under La. C.C.P. art. 966(B)(3), no additional documents may be filed with the reply memorandum. Therefore, the documents LDWF attached to its reply memorandum are not to be considered. See Jeandron v. Cenac, 2022-1158 (La. App. 1st Cir. 4/14/23), 365 So. 3d 851, 859 n.7.

The Lacassins filed a motion to continue, and the hearing on the motion was set for June 2, 2023, the same date as the hearing on the motion for summary judgment. At the hearing, the Lacassins argued they needed to take the deposition of Eric Burson, an accident reconstruction specialist, to properly oppose the motion for summary judgment. LDWF then stated that it would agree to waive the briefing deadlines under La. C.C.P. art. 966 so the Lacassins could depose Mr. Burson, and the parties agreed that each side would file a supplemental memorandum after the deposition was taken. The hearing on the motion for summary judgment was reset for June 27, 2023.[2]

The Lacassins filed a supplemental memorandum with attachments in opposition to the motion for summary judgment. The Lacassins maintained there were genuine issues of material fact and LDWF breached the duty it owed to them. In support of their supplemental memorandum, the Lacassins attached excerpts of the deposition of Errol Theriot; excerpts of the deposition of Gerard Lacassin; the affidavit of Adam Breaux; the affidavit of Toby Mire; the affidavit of Mathew Tate; excerpts of the deposition of Kyle Ford; excerpts of the deposition of Devin

___

[2] We note that the filing deadlines are reset any time a trial court grants a motion to continue a hearing on a motion for summary judgment. See Reed v. Restorative Home Health Care, LLC, 2019-01974 (La. 2/26/20), 289 So. 3d 1028 (per curiam). However, at the hearing on the motion to continue, the parties agreed to extend the filing deadlines with the trial court's approval, which is permitted under La. C.C.P. art. 966(B).

Dugas; excerpts of the deposition of Eric Burson; and a Notice of Rendition of Judgment and Judgment dated May 3, 2019. Thereafter, LDWF filed a supplemental memorandum in reply to the Lacassins' supplemental opposition to LDWF's motion for summary judgment. LDWF did not object to any of the additional documents attached to the Lacassins' supplemental memorandum. Considering the additional attachments filed (excluding the attachments to LDWF's reply memorandum), the additional memoranda filed, and the general disregard for the guidelines of La. C.C.P. art. 966, we are left with a hodgepodge of memoranda and exhibits which complicate our analysis. However, since the parties agreed to reset the hearing and have not maintained any objection to the exhibits, we must consider that which is not objected to. See La. C.C.P. art. 966(D)(2).

On June 21, 2023, the trial court signed the "Judgment on Motion for Summary Judgment and Reasons." The trial court indicated that there was no genuine issue of material fact. Further, the trial court stated that LDWF did not owe a duty to warn the Lacassins of a dangerous condition located in an area not intended for driving or parking and that the condition was open and obvious to the Lacassins. Thus, the trial court granted LDWF's motion for summary judgment and dismissed the matter without prejudice. Thereafter, on June 23, 2023, the trial court issued a supplemental judgment on LDWF's motion for summary judgment, which supplemented the June 21, 2023 judgment. The supplemental judgment overruled LDWF's objection to the admissibility of the affidavits of Adam Breaux, Toby Mire, and Mathew Tate.[3]

The Lacassins appealed, contending the trial court erred in granting LDWF's motion for summary judgment. Specifically, the Lacassins assert the trial court erred in finding the Lacassins drove into an area where LDWF had no reasonable

---

[3] LDWF did not appeal the trial court's ruling pertaining to its objections to the affidavits.

5

expectation a vehicle would drive and LDWF had no duty to warn the Lacassins of the sinkhole; the trial court erred in finding that the sinkhole was open and obvious; and the trial court violated La. C.C.P. art. 966 by weighing the evidence, making credibility determinations, and not resolving all doubts in the Lacassins' favor.

## SUMMARY JUDGMENT[4]

An appellate court reviews the grant or denial of summary judgment *de novo* under the same criteria governing the trial court's determination of whether summary judgment is appropriate. M/V Resources LLC v. Louisiana Hardwood Products LLC, 2016-0758 (La. App. 1st Cir. 7/26/17), 225 So. 3d 1104, 1109, writ denied, 2017-1748 (La. 12/5/17), 231 So. 3d 624. Because this court reviews summary judgments *de novo*, we afford no deference to the trial court's underlying reasoning for its judgment. John River Cartage, Inc. v. Louisiana Generating, LLC, 2020-0162 (La. App. 1st Cir. 3/4/20), 300 So. 3d 437, 453 n.12. On *de novo* review, we also afford no deference to the legal standard or analysis applied by the trial court. Tucker v. Chatfield, 2023-0343 (La. App. 1st Cir. 11/9/23), 379 So. 3d 678, 684.

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The summary judgment mover maintains the burden of proof. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue before the court on the motion, his burden is satisfied by pointing out an absence of factual support for

---

[4] Louisiana Code of Civil Procedure article 966 was amended by La. Acts 2023, No. 317, § 1; La. Acts 2023, No. 368, § 1, effective August 1, 2023. This court has determined that the amendments are substantive and cannot be applied retroactively. See La. C.C.P. art. 966, Comments – 2023, Comment (f); Ricketson v. McKenzie, 2023-0314 (La. App. 1st Cir. 10/4/23), 380 So. 3d 1, 5. Accordingly, in the instant matter, we apply the version of La. C.C.P. art. 966 in effect at the time the motion for summary judgment was submitted and heard.

6

one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. If the adverse party fails to meet this burden, the mover is entitled to judgment as a matter of law. Id.

## DISCUSSION

The Lacassins allege that there are genuine issues of material fact regarding whether LDWF had a reasonable expectation that a vehicle would traverse the area where the sinkhole was located and whether the sinkhole was open and obvious. Initially, LDWF bore the burden of proof both as the moving party seeking summary judgment and as the party asserting the affirmative defense of immunity. See La. C.C.P. art. 966(D)(1); Bailey v. Department of Culture Recreation & Tourism, 2021-0227 (La. App. 1st Cir. 11/4/21), 332 So. 3d 679, 685. Both the Lacassins and LDWF agree that La. R.S. 9:2795 applies in this case. Louisiana Revised Statutes 9:2795 provides, in pertinent part:

A. As used in this Section:

(1) "Land" means urban or rural land, roads, water, watercourses, private ways or buildings, structures, and machinery or equipment when attached to the realty.

(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

(3) "Recreational purposes" includes but is not limited to any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized, or nonmotorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, roller skating, roller blading, skate boarding, sledding, snowmobiling, snow skiing, summer and winter sports, or viewing or enjoying historical, archaeological, scenic, or scientific sites.

(4) "Charge" means the admission price or fee asked in return for permission to use lands.

(5) "Person" means individuals regardless of age.

7

**B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land,** except an owner of commercial recreational developments or facilities, **who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:**

**(a) Extend any assurance that the premises are safe for any purposes.**

(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.

**(c) Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made.**

\*\*\*

E. (1) The limitation of liability provided in this Section shall apply to any lands or water bottoms owned, leased, or managed by the Department of Wildlife and Fisheries, regardless of the purposes for which the land or water bottoms are used, and whether they are used for recreational or nonrecreational purposes.

(2)(a) The limitation of liability provided in this Section shall apply to any lands, whether urban or rural, which are owned, leased, or managed as a public park by the state or any of its political subdivisions and which are used for recreational purposes.

(b) The provision of supervision on any land managed as a public park by the state or any of its political subdivisions does not create any greater duty of care which may exist and does not create a duty of care or basis of liability for personal injury or for damage to personal property caused by the act or omission of any person responsible for security or supervision of park activities, except as provided in Subparagraph (E)(2)(d) of this Section.

\*\*\*

(d) The limitation of liability as extended to parks in this Section shall not apply to intentional or grossly negligent acts by an employee of the public entity.

(Emphasis added.)

While both parties agree that La. R.S. 9:2795 applies, the Lacassins allege that there are genuine issues of material fact regarding whether LDWF had a reasonable expectation that a vehicle would traverse the area where the sinkhole was located and whether the sinkhole was open and obvious. Once a defendant has

8

established that it is entitled to immunity under La. R.S. 9:2795, the burden of establishing a malicious or willful failure to warn of a dangerous condition shifts to the plaintiff. Lester v. BREC Foundation, 2022-0514 (La. App. 1st Cir. 11/4/22), 356 So. 3d 18, 30, writ denied, 2023-00019 (La. 3/7/23), 357 So. 3d 351. A defendant owes a duty to discover any unreasonably dangerous condition on the premises and either correct it or warn potential victims of its existence. However, this duty does not extend to potentially dangerous conditions which should have been observed by an individual in the exercise of reasonable care or which are as obvious to a property owner as to a visitor. Doyle v. Lonesome Development, Limited Liability Company, 2017-0787 (La. App. 1st Cir. 7/18/18), 254 So. 3d 714, 725, writ denied, 2018-1369 (La. 11/14/18), 256 So. 3d 291.

Since LDWF will not bear the burden of establishing a malicious or willful failure to warn potential victims of the sinkhole at trial, it was only required to point out an absence of factual support for one or more elements essential to the Lacassins' claim. LDWF focuses on the duty element, arguing it had no duty to warn the Lacassins of the presence of the sinkhole, and the breach element, arguing the sinkhole was open and obvious. In support of its motion for summary judgment, LDWF submitted the affidavit of Anthony Vidrine, the Regional Manager for LDWF. Mr. Vidrine stated he oversees the management and all projects at Sherburne and Sherburne is owned and administered by LDWF. He further indicated he is familiar with the operation and maintenance of Sherburne and the roads and designated parking areas there. Mr. Vidrine said there were approximately 21 designated parking areas in Sherburne but there were not any designated parking or turnaround areas at any part or area of Muddy Road. Further, Mr. Vidrine stated that maps of Sherburne are available to the public via printed maps, pocket maps, or online maps.

LDWF also attached excerpts of the deposition of Errol Theriot in support of its motion. Mr. Theriot testified that he has worked for LDWF at Sherburne since 1998 and manages two employees. Mr. Theriot and the two other employees bushhog[5] the area and grade the roads. Mr. Theriot further stated the two yellow rails near the area where the accident happened were there in connection with a well site that had been located beyond the rails. He stated the yellow rails were there to stop people from driving into the well site and the area was "pretty much kind of like a little turnaround" but it was not a parking area. Further, Mr. Theriot stated he saw the sinkhole in September when he was bush hogging but he continued working and did not report it.

Excerpts of the deposition of Gerard Lacassin were also attached in support of LDWF's motion for summary judgment. Gerard stated he had an outdated map of Sherburne. He further stated that the area where the incident occurred had been "labeled a parking area by [him] and everybody that [he] hunts with," that he saw people park there, and it was "definitely a parking spot."

The affidavit of Eric Burson was also attached in support of LDWF's motion. Mr. Burson inspected the area of the accident on September 27, 2021, almost four years after the incident, and he reviewed the 2016 and 2020 maps of Sherburne. He stated the area where the sinkhole was located was not a designated parking area pursuant to the maps that he reviewed. Further, he opined that if Gerard was entering the area at a speed of five to ten miles per hour with subtle braking, he could have stopped his vehicle within a distance of two to eight feet.

On the other hand, the Lacassins attached the affidavits of Adam Breaux, Toby Mire, and Mathew Tate in support of their memorandum and supplemental memorandum in opposition. The affidavits provide that they are familiar with the

---

[5] "Bushhog" means to clear land of trees and brush. "Bushhog." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/bushhog. Accessed March 15, 2024.

grassy lot wherein the sued upon incident occurred; they have parked in the subject lot dozens of times or on many occasions; they have never been told not to park in the subject lot; and they are familiar with other hunters who have also parked or turned around in the subject lot. Further, Mr. Mire indicated LDWF instructed him to park in the lot at issue as opposed to parking on the gravel road. Additionally, excerpts of the depositions of Kyle Ford and Devin Dugas, LDWF employees, are attached in support of the Lacassins' supplemental memorandum in opposition. Both Mr. Ford and Mr. Dugas stated it would be unusual to see a vehicle in the area where the accident occurred and they never saw vehicles parked there. Further, Mr. Ford stated that he would have told someone to move their vehicle if he saw it parked in the area where the accident occurred.

After *de novo* review, we find the evidence establishes the existence of material facts genuinely in dispute. The conflicting testimony shows that there is a genuine issue of material fact regarding whether there was a reasonable expectation that a motorist would attempt to drive in the area where the sinkhole was located. In determining whether a factual issue is genuine for purposes of summary judgment, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. State Through Division of Administration v. Migues Deloach Company, LLC, 2023-0320 (La. App. 1st Cir. 12/27/23), 381 So. 3d 781, 786. Thus, we find there are genuine issues of material fact regarding the expectation that a motorist would traverse the area.

LDWF also contends that it cannot be liable for the Lacassins' injuries because the duty to warn does not extend to potentially dangerous conditions which should have been observed by an individual in the exercise of reasonable care or which are as obvious to a property owner as to a visitor.[6] In Mr. Theriot's

_____

[6] In Farrell, the Louisiana Supreme Court recently stated that "whether a condition is open and obvious is embraced within the breach of the duty element of the duty/risk analysis and

11

deposition, he stated that he saw the sinkhole in September while he was bush hogging next to the hole but not before. Further, Mr. Burson, the forensic accident reconstructionist, opined that if Gerard was entering the area at a speed of five to ten miles per hour with subtle braking, he could have stopped his vehicle within a distance of two to eight feet. However, Mr. Burson used an estimated speed and estimated measurements in coming to his conclusion that the sinkhole would have been visible to Gerard as the driver of the vehicle. Alternatively, Gerard testified that he did not see the sinkhole before the accident occurred and he would have tried to avoid it if he had seen it. After considering the evidence submitted, it is apparent that even if LDWF had a duty to warn the Lacassins under La. R.S. 9:2795, there are genuine issues of material fact as to whether the sinkhole was open and obvious. For those reasons, we conclude the trial court erred in granting summary judgment in favor of LDWF.

## CONCLUSION

For the above and foregoing reasons, the June 21, 2023 judgment of the trial court granting State of Louisiana, Department of Wildlife and Fisheries' motion for summary judgment and dismissing Gerard Lacassin's and Leighton Lacassin's claims is reversed. Costs of this appeal, in the amount of $4,637.00, are assessed to State of Louisiana, Department of Wildlife and Fisheries.

**REVERSED.**

---

is not a jurisprudential doctrine barring recovery, but only a factor of the risk/utility balancing test." Farrell v. Circle K Stores, Inc., 2022-00849 (La. 3/17/23), 359 So. 3d 467, 478.

# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2023 CA 1052

### GERALD LACASSIN, INDIVIDUALLY AND ON BEHALF OF LEIGHTON LACASSIN

### VERSUS

### STATE OF LOUISIANA, DEPARTMENT OF WILDLIFE AND FISHERIES

*************************************************

**McClendon, J., concurring.**

I concur in the result reached by the majority.