## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0086

SANTA MARIA HOMEOWNERS ASSOCIATION, INC.

VERSUS

CLASSIC PROPERTIES MANAGEMENT CORP. and
SANTA MARIA INTEREST, LLC

Judgment Rendered: **NOV 1 6 2022**

* * * * * * *

On Appeal from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 694794

Honorable Ronald Johnson, Judge Presiding

* * * * * * *

Shelton Dennis Blunt
Brittany Holt Alexander
Baton Rouge, Louisiana
and
Jennifer R. Buckingham
Richard G. Duplantier, Jr.
Henry M. Weber
New Orleans, Louisiana

Attorneys for Plaintiff/Appellee,
Santa Maria Homeowners
Association, Inc.


Bailey D. Morse
Andrew J. Walker
Covington, Louisiana

Attorneys for Defendants/Appellants,
Classic Properties Management
Corp. and Santa Maria Interest, LLC

* * * * * * *

BEFORE: WELCH, PENZATO, AND LANIER, JJ.

Welch, J. concurs in result

**PENZATO, J.**

Appellants, Classic Properties Management Corp. and Santa Maria Interest, LLC, appeal a judgment denying their motion for summary judgment and granting a motion for summary judgment filed by the Santa Maria Homeowners Association, Inc. For the reasons that follow, we affirm in part, reverse in part, render, and remand.

## FACTS AND PROCEDURAL HISTORY

Santa Maria Interest, LLC (the "developer") was the original developer of the Highlands of Santa Maria Subdivision ("the Highlands"), located in East Baton Rouge Parish, Louisiana. The developer established building restrictions in a document entitled "Declaration of Restrictions" (the "Restrictions"), dated October 22, 2003.[1] The Restrictions provided for a homeowners association, the Santa Maria Homeowners Association (the "Association"). Section 5.2 of the Restrictions provided that the Association had two classes of voting membership. Each lot owner was a Class A member of the Association;[2] the developer was the owner of 2,000 Class B memberships. Section 5.2 further stated that each Class B membership would lapse and become a nullity upon the occurrence of one of the following events: (i) January 1, 2020; or (ii) surrender of the Class B memberships by the then holders for cancellation on the books of the Association. Section 13.3 of the Restrictions provided for amendment of the Restrictions as follows:

> During the period Developer[3] has a Class B membership in the Association, the Developer reserves the right to amend this Declaration one or more times, to add additional lots to the Subdivision and to impose on the lots the building and use restrictions, conditions, liens and servitudes contained in this Declaration or any other building and use restrictions, conditions,

---

[1] The Restrictions were filed and recorded with the Clerk of Court for East Baton Rouge Parish on November 5, 2003.

[2] At all pertinent times, there were 147 Class A members.

[3] "Developer" is defined in Section 3.7 of the Restrictions as Santa Maria Interest, LLC, or its successor entity who is assigned the rights of Santa Maria Interest, LLC, as the Developer.

liens and servitudes as provided in the Act of Amendment and **to amend this Act of Restrictions in any manner or for any other purpose deemed necessary or appropriate in the sole discretion of the Developer.** The Amendment shall be in writing and shall be effective when filed for registry in the official records of East Baton Rouge Parish, State of Louisiana. Upon the filing of the Amendment of this Act of Restrictions, the Lots described in this Act and the Lots described in the Amendment shall constitute a single subdivision, and the building and use restrictions, conditions, liens and servitudes contained in this Act and in the Amendment shall be binding on each lot, fully enforceable by each lot owner in the Subdivision. (Emphasis added.)

The Association's Articles of Incorporation (the "Articles") were filed with the Louisiana Secretary of State on October 22, 2003. Article V provided for the same two classes of voting membership as Section 5.2 of the Restrictions, as well as the same occurrences for the lapse of the Class B memberships. Article X of the Articles provided for amendment to the Articles, and required that an amendment "be approved by sixty-seven (67%) percent of the total voting power of the Association."

By-laws of the Association (the "By-laws") were adopted on October 24, 2003. Article II of the By-laws provided for membership meetings, which were to take place in East Baton Rouge Parish. Article IX of the By-laws provided, in pertinent part, for amendment to the By-laws as follows:

> 2. A resolution adopting a proposed amendment must receive approval by a vote or by written consent, of fifty-one (51%) percent of the entire voting power of the membership or may be made by the Developer alone without a vote as long as the Developer is a Class "B" member. ...
>
> ***
>
> 5. No amendment to these By-Laws shall operate to change any lot owner's share of the total expenses of the Association, or change the voting rights of its members, unless the record owner of the lot concerned and all mortgagees who have duly recorded instruments in the records of East Baton Rouge Parish and whose mortgage is registered with the Secretary of this Association shall join in the execution of the amendment.

On December 1, 2017, the developer amended Section 5.2 of the Restrictions to delete the January 1, 2020 termination date of the class B

3

memberships. Thereafter, the developer transferred all of its 2,000 class B memberships in the Association to Classic Properties Management Corp.

An annual Association meeting was held on March 28, 2019. The adoption of an amendment to the Association's Articles to ratify the amendment to the Restrictions regarding the continuation of the Class B memberships was discussed, but a vote was not taken at that time. On October 1, 2019, Classic Properties Management Corp., as developer, amended Articles II and VII of the Association's By-laws to allow for remote meetings and electronic voting.[4]

Electronic voting was conducted December 16, 2019–December 18, 2019. The electronic ballot included a proposed amendment to Article V of the Articles to delete the January 1, 2020 termination date of the class B memberships. The proposed amendment to the Articles passed by a vote of 2,006 "In Favor" to 32 "Against." On December 30, 2019, the amendment to the Articles deleting the January 1, 2020 termination date of the class B memberships was filed with the Louisiana Secretary of State.

On March 5, 2020, the Association filed a petition for declaratory judgment to recognize the termination of the class B memberships. In its petition, the Association sought a judgment declaring the December 30, 2019 amendment to Article V of the Articles invalid and of no force and effect; the December 1, 2017 amendment to Section 5.2 of the Restrictions invalid and of no force and effect; and that the class B memberships in the Association lapsed and became a nullity on January 1, 2020.

---

[4] In response to the amendment of the By-laws, the class A members prepared a petition in opposition. 115 of the 147 class A members signed the petition opposing the amendment.

In response, Classic Properties Management Corp. and Santa Maria Interest, LLC (collectively, "Appellants"), filed a reconventional demand seeking a declaratory judgment declaring the December 1, 2017, October 1, 2019, and December 30, 2019 amendments to be fully effective and valid, and declaring Appellants to be the rightful owner and holder of 2,000 class B memberships in the Association. Appellants further sought judgment declaring any acts undertaken by the class A members in the name of the Association since January 1, 2020, to be invalid, and for damages as a result of any such acts.

The parties filed motions for summary judgment regarding the validity of the amendments and the lapse of the class B memberships. Following a hearing on both motions, the trial court took the matter under advisement. On August 9, 2021, the trial court issued a ruling granting the Association's motion for summary judgment and denying Appellants' motion for summary judgment. On September 14, 2021, the trial court signed a judgment in accordance with its ruling and further ordered that the December 30, 2019 amendment to the Articles and the December 1, 2017 amendment to the Restrictions were invalid and of no force or effect, and that the class B memberships in the Association had lapsed and became a nullity on January 1, 2020. Appellants appealed the September 14, 2021 judgment.

On March 21, 2022, this court, *ex proprio muto*, issued a rule to show cause order, noting that the September 14, 2021 judgment appeared to lack the appropriate decretal language disposing of and/or dismissing any claims, and accordingly, we could not determine if the judgment dismissed any claims in their entirety or if a La. C.C.P. art. 1915(B) designation was needed. In response to the show cause order, the parties filed a joint motion for limited remand, wherein they represented that the trial court's ruling effectively disposed of all issues before the trial court, but the necessary decretal language was unintentionally omitted from the September 14, 2021 judgment. The parties sought an order of limited remand

5

for the trial court to render an amended judgment containing appropriate decretal language. This court granted the motion, and remanded the matter for the limited purpose of instructing the trial court to: (1) sign an amended judgment that corrected the deficiencies and complied with La. C.C.P. art. 1918; (2) certify the September 14, 2021 judgment in accord with La. C.C.P. art. 1915(B); **or** (3) indicate that it declined to certify the September 14, 2021 judgment.

On June 13, 2022, the record on appeal was supplemented with an amended judgment signed by the trial court on May 20, 2022. The judgment was amended to dismiss Appellants' reconventional demand in its entirety; additionally, the judgment was certified as a final judgment pursuant to La. C.C.P. art. 1915(B).

On August 23, 2022, this court issued an interim order noting the following:

> Notwithstanding the parties' representations in their motion to remand and at the time of oral argument that all outstanding claims have been adjudicated by the ruling at issue, the May 20, 2022 Amended Judgment was certified as a partial final judgment in accordance with La. C.C.P. art. 1915(B).

Accordingly, we remanded the matter for the limited purpose of instructing the trial court to sign an amended judgment providing that all outstanding claims of the parties have been adjudicated and that the judgment was a final, appealable judgment subject to appeal pursuant to La. C.C.P. art. 1918; **or** to indicate that it declined to do so.

On September 26, 2022, the record on appeal was supplemented with an amended judgment signed by the trial court on August 31, 2022. In addition to denying Appellants' motion for summary judgment and dismissing Appellants' reconventional demand in its entirety; granting the Association's motion for summary judgment; ordering that the December 30, 2019 amendment to the Articles was invalid and of no force or effect; ordering that the December 1, 2017 amendment to the Restrictions was invalid and of no force or effect; and ordering that class B memberships in the Association lapsed and became a nullity on

6

January 1, 2020; the judgment contained the following:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all outstanding claims of the parties, including the [Appellants'] claims b, d, e, f, and g have[] been adjudicated and that pursuant to La. [C.C.P. art.] 1915(B), this judgment be and is hereby certified as a final judgment and fully appealable.

We find that the August 31, 2022 amended judgment contains appropriate decretal language indicating that all outstanding claims of the parties have been adjudicated such that the judgment is a final, appealable judgment subject to appeal pursuant to La. C.C.P. art. 1918. Accordingly, the trial court's certification pursuant to La. C.C.P. art. 1915(B) was unnecessary in this case. Because the August 31, 2022 judgment is a final judgment, our jurisdiction extends to this appeal.

## ASSIGNMENT OF ERROR

Appellants contend the trial court erred in granting the Association's motion for summary judgment and denying Appellants' motion for summary judgment, declaring the amendments at issue to the Restrictions and Articles null and without effect, and by ruling that Appellants' class B membership shares lapsed and became a nullity on January 1, 2020.

## LAW AND DISCUSSION

The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The burden of proof is on the mover. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be

7

negated. Rather, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Aucoin v. Larpenter*, 2021-0064 (La. App. 1 Cir. 9/20/21), 329 So. 3d 363, 368, writ denied, 2021-01505 (La. 12/7/21), 328 So. 3d 420. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id.* Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Durand v. Graham*, 2019-1312 (La. App. 1 Cir. 6/12/20), 306 So. 3d 437, 440.

Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements. La. C.C. art. 775. In the case of building restrictions imposed on a subdivision, the restrictions may be likened to a contract among the property owners and the developer. *Doyle v. Lonesome Development, Limited Liability Company*, 2017-0787 (La. App. 1 Cir. 7/18/18), 254 So. 3d 714, 728, writ denied, 2018-1369 (La. 11/14/18), 256 So. 3d 291. Documents establishing building restrictions are subject to interpretation and enforcement as contracts. *Id.*

Contracts have the effect of law between the parties and the courts are to interpret them according to the common intent of the parties. See La. C.C. arts. 1983, 2045; *Harp v. Succession of Bryan*, 2019-0062 (La. App. 1 Cir. 9/3/20), 313 So. 3d 284, 293. When the words of a contract are clear and explicit and lead to no

8

absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. Parties are free to contract for any object that is lawful. La. C.C. art. 1971.

Appellants contend that the trial court's erroneous ruling abrogated their contractual freedom and authority. According to Appellants, the Articles and Restrictions were amended to eliminate the original termination date of the class B shares pursuant to the contractual authority granted to Appellants in the governing documents of the Association. According to Appellants, while the original organizational documents contemplated an end to the class B memberships, that provision was always subject to amendment pursuant to the authority granted to the class B membership by the same documents.

The Association argues that the governing documents do not give the developer the authority to change the contract termination date. The Association alleges that the amendment to the Articles was a breach of Article IX, Section 5, which requires the class A members to join in an amendment to change the voting rights of the Association's members.[5] The Association further argues that the lot owners only purchased their lots based upon the provisions allowing for the governance by the lot owners on January 1, 2020. According to the Association, when the developer eliminated the termination date of its class B membership, it created "a detrimental reliance."[6] Finally, the Association argues that the removal

---

[5] The Association further argues that the amendment to the By-laws violated Louisiana law, specifically La. R.S. 12:237(C), which requires the vote of members whose rights are affected by the amendment. However, La. R.S. 12:237(A) provides that a non-profit corporation "may amend its articles in compliance with any method stipulated in its articles."

[6] The Association provided no evidence in connection with its motion for summary judgment that the lot owners detrimentally relied on the provisions in the governing documents that the class B memberships would expire on January 1, 2020. Moreover, the Association did not assert a claim for detrimental reliance.

of the expiration date of the class B memberships creates "an absurd consequence" by allowing perpetual control of the Association by an entity that does not have an ownership interest in the Association.

Upon our de novo review, we find that Appellants amended each of the governing documents in accordance with the document's provisions. At the time of the December 1, 2017 amendment to the Restrictions, the developer had a class B membership in the Association, and thus had the ability to amend the Restrictions in any manner and for any purpose deemed necessary or appropriate in the developer's sole discretion. Classic Properties Management Corp. was a class B member at the time of the October 1, 2019 amendment to the By-laws, and therefore pursuant to Article IX, Section 2, had the authority to make an amendment without a vote. On October 1, 2019, Classic Properties Management Corp. amended Article II, "Membership Meetings," and Article VII, "Notices," to allow for remote meetings, notice via email, and voting by electronic ballot. None of these amendments changed the voting *rights* of the Association's members so as to implicate Article IX, Section 5. The changes simply allowed for a different *means* for members to exercise their right to vote. In its brief, the Association contends the electronic vote was problematic and confusing. However, no evidence of this was submitted in connection with the Association's motion for summary judgment. The December 30, 2019 amendment to the Articles passed by a vote of 2,006 "In Favor" to 32 "Against." Thus, the amendment was approved by sixty-seven percent of the total voting power of the Association, as required by Article X.

The Association argues that the removal of the expiration date of the class B memberships creates "an absurd consequence." However, Louisiana law does not require the termination of class B membership by the developer of a subdivision subject to building restrictions. Parties are free to contract for any lawful object.

10

La. C.C. art. 1971. Where, as here, the original organizational documents clearly and explicitly allowed for amendment in the developer's sole discretion and by the developer alone without a vote, we do not find that the removal of the expiration date of the class B memberships created "an absurd consequence."

Finally, we address the Association's contention that this court's analysis in *Highland Oaks Estates Homeowners Association, Inc. v. Estapa*, 2010-0146 (La. App. 1 Cir. 6/11/10), 2010 WL 2342830 (unpublished), supports a finding in this case that the developer's Class B memberships lapsed and became a nullity on January 1, 2020. In *Highland Oaks*, there was a conflict between the provisions of the restrictive covenants and the articles of incorporation with regard to the lapse of the developer's class B memberships. The court held that as between the lot/property owners of Highland Oaks Estates and the developer, the restrictive covenant document was the law between them. *Highland Oaks*, 2010 WL 2342830, at \*3. The developer's class B membership had lapsed under the provisions of the restrictive covenants at the time of a homeowner's meeting where the developer appointed himself president of the homeowner's association. Thus, the court held that the developer was not entitled to vote at that meeting, and he was without authority to file suit on behalf of the homeowner's association. *Id.* at \*4.

The facts in this case are clearly distinguishable. At the time of each amendment at issue to the Restrictions, By-laws, and Articles, the developer or its successor entity, Classic Properties Management Corp., was a class B member of the Association. Thus, *Highland Oaks* does not support a finding in this case that the class B members lapsed and became a nullity on January 1, 2020.

Based upon our de novo review of the record, we find the December 1, 2017 amendment to the Restrictions, the October 1, 2019 amendment to the By-laws, and the December 30, 2019 amendment to the Articles to be fully effective and

11

valid. We further find Classic Properties Management Corp. to be the rightful owner and holder of 2,000 class B memberships in the Association. Thus, we find that Appellants are entitled to partial summary judgment on their reconventional demand for a declaratory judgment. However, Appellants have failed to prove they are entitled to summary judgment regarding their claims that all acts undertaken by the class A members in the name of the Association since January 1, 2020, are invalid; that they are entitled to the return of money collected by the Association, together with an award of damages, attorney's fees and cost in light of the Association's conversion; and that they are entitled to damages for any default, breach of contract, liability, or other damage incurred by the Association since January 1, 2020. We reverse the granting of the Association's motion for summary judgment.

## CONCLUSION

For the above and foregoing reasons, we reverse that portion of the trial court's August 31, 2022 judgment that granted summary judgment in favor of the Santa Maria Homeowners Association, Inc. Further, we reverse, in part, that portion of the trial court's judgment that denied the motion for summary judgment filed by Classic Properties Management Corp. and Santa Maria Interest, LLC, and hereby render judgment in favor of Classic Properties Management Corp. and Santa Maria Interest, LLC, finding that the December 1, 2017 amendment to the Declaration of Restrictions for Santa Maria Subdivision, Sixth Filing, Phase I (The Highlands), is fully effective and valid; that the October 1, 2019 amendment to the By-laws of Santa Maria Homeowners Association, Inc., is fully effective and valid; that the December 30, 2019 amendment to the Articles of Incorporation for Santa Maria Homeowners Association, Inc. is fully effective and valid; and that Classic Properties Management Corp. is declared to be the rightful owner and holder of 2,000 class B memberships in Santa Maria Homeowners Association, Inc. In all

12

other respects, the motion for summary judgment filed by Classic Properties Management Corp. and Santa Maria Interest, LLC, is denied. The matter is remanded for further proceedings consistent with this opinion. All costs of this appeal are assessed to the Santa Maria Homeowners Association, Inc.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND RENDERED; REMANDED.**